———O———

JOHN W. THOMAS *et al.*, Appellants, *vs.* SARAH E. STUMP, *et al.*, Respondents.

1. *Will—Undue influence—Mental capacity.*—In suit to set aside a will on the ground of mental incapacity, undue influence, etc. *Held*, 1st, that the fact that at the date of testator's marriage, he was sixty-eight and his wife but eighteen years of age was not *per se* proof of his insanity or imbecility ; 2nd, that evidence touching the wife's reputation for chastity was inadmissible; 3rd, that a sore leg was not such an infirmity, as would disqualify him from making his will; 4th, that inequality in the distribution of the estate might be a circumstance going to show undue influence, but nothing more; 5th, that the statement of the testator, that the will was written for him by a lawyer, was a sufficient assertion that he understood its contents.

*Appeal from St. Louis Circuit Court.*

*T. G. C. Davis, with McElhinney & Musser,* for appellants, cited Redf. Wills, p. 228 ; Hess' Appeal, 43 Penn. St., 73 ; Harrison vs. Rowan, 3 Wash. Ct. Ct., 585 ; Harvey vs. Sullens, 46 Mo., 147 ; Harrel vs. Harrel, 1 DuVall [Ky.,] 203.

*D. T. Jewett,* for Respondents, cited Harvey vs. Heirs of Sullens, 56 Mo., 372.

NAPTON, Judge, delivered the opinion of the court.

This is a suit, under our statute, brought by the heirs of a deceased daughter of John Stump by his first wife, against an infant daughter of said Stump by his second wife, to have the will of said Stump, which had been previously admitted to probate, set aside and declared null. The son by the first wife, David M. Stump, was also made a party defendant, but as he was acting as guardian of the infant defendant, and was interested in having the will set aside, a guardian *ad litem* of the infant daughter was appointed. The suit was instituted upwards of four years after the will had been admitted to probate. The grounds upon which the probate of the will is contested are, that the deceased was very old and infirm in body and mind, and, by misrepresentations and undue influence, and threats of his wife, was induced to make the will. The testator died about two years after the execution of the will, and his wife died a few weeks after the testator, leaving this defendant, the daughter, an infant eight or nine years old.

After a trial of several days, in which as the record abundantly shows the greatest latitude was given the contestants, much of the evidence being incompetent and still more totally irrelevant, and after instructions exceedingly favorable to the contestants, the jury found a verdict establishing the will.

The formal execution of the will is not disputed. The testator called on four of his neighbors to meet him at his house, produced the paper in question to them, said it was his will, and had been drawn up for him by a lawyer in St. Louis, signed it in the presence of these neighbors, and requested their attestation as witnesses. Three of them did so attest it in his presence and by his directions. The testator was then about seventy-five years old, and lived two years thereafter. He was apparently sound in body and mind, unless his age is to be regarded as establishing the contrary. The only neighbor called on and present who did not attest

the will was named in it as executor—and he was a son of one of the attesting witnesses.

These witnesses all concur that David Stump was a rather hale old man; that he had a farm of three or four hundred acres; had been engaged in buying and feeding stock; that he was illiterate but managed his affairs with prudence and success, and at the time of executing his will was in good health and to all appearances as sound in mind, as well as body, as he ever had been.

To overthrow this *prima facie* case, the contestants relied on certain facts, some of which they proved and offered evidence to prove the others; first, that David Stump, at the time of his marriage with the mother of defendant, was sixty-eight years old, and his wife only eighteen; second, that previous to his marriage there were rumors or reports, in the neighborhood of his wife's residence, prejudicial to her chastity; third, that at the time of his marriage and up to the date of his will he was infirm in body, and that his wife exercised an undue influence over him; fourth, that he had previous to this last will made two other wills; fifth, that he did not make an equal distribution of his estate between all his children.

The first point was clearly established, but that such a marriage is to be regarded as *per se* proof of insanity or imbecility, we are not prepared to admit. The evidence on the second point was clearly inadmissible (Rogers & Gillis vs. Troost's Adm'r, 51 Mo., 470), but it was admitted, and very properly disregarded by the jury.

In regard to the infirmities of the testator, physical or mental, the contestants failed to establish any such infirmities. There was some evidence that he had a sore leg, but that fact, if it was a fact, would hardly disqualify him from making a will.

As to the exercise of any influence by his wife in the making of his will, there was a total failure of evidence, unless we are to regard the testimony of some of his negro servants, who stated some altercations between the testator and his wife (which would have no tendency to establish any undue

influence), and the statement of one woman, that the old man at one time complained to her, that his wife would not let him give his son David enough to put him on an equality with his other children.

There was evidence to show the execution of other wills in 1860; but strange to say, the contents of the first will did not materially differ from the one proved. The same inequality, complained of in the last, was in the first. The only change was in omitting a clause which devised to two of his slaves their freedom and forty acres of land each. It is not singular, that in the will of 1867 this clause was omitted, nor is it singular, that these devisees are witnesses to impeach the last will.

As to the inequality in the will contested between the children of the testator, we presume that, as long as people are allowed by law to make wills, this inequality does not annul them. It may be a circumstance going to show some improper influence, but nothing more.

The only point of law, raised in this case, is the refusal of the court to give the first instruction asked by the contestants. That instruction is as follows:

"Unless you are satisfied from the evidence before you, that John Stump either read or so knew the contents of the paper propounded as his will, or that it was read to him by some one who read it correctly, and he so knew and understood the contents of the said paper, when he executed it, the same is not his will."

This instruction is somewhat obscurely expressed, but it seems to design to assert the proposition, that when a man executes a will, he must either read it, or have it read to him, at the time of its execution. This proposition would apply to deeds and notes and all other instruments of writing, and it would hardly be seriously contended, that a party suing on a note must prove that the defendant read it before signing it.

The proof in this case was that the testator, when producing the paper, which he said was his will, stated that it was writ-

ten by a lawyer of St. Louis. No lawyer, or scrivener, could write a will for a man except under his dictation. The statements of the testator, that the paper produced was written for him by a lawyer, was an assertion that he perfectly understood its contents.

There was no basis therefore for such an instruction on the evidence, even had it been abstractly the law.

It is unnecessary to recite the instructions in this case, since it is conceded that they were right with the exception above noted. The court went very far in giving instructions for the contestants, and specifically called the attention of the jury to all the points in the evidence in their favor. But the jury found against the contestants, and we do not see how they could have found otherwise, unless it be the law in this state, that a man of sixty-eight cannot marry a woman of eighteen, or that a man of seventy-five cannot make a will. These are really the only two facts established.

Judgment affirmed. The other judges concur, except Judge Vories, who is absent.