(50 Misc. Rep. 23.)

PEOPLE v. NEW YORK BUILDING–LOAN BANKING CO.

(Supreme Court, Special Term, New York County.   March, 1906.)

1. CORPORATIONS—PREFERRED STOCKHOLDERS—PRIORITIES.

A holder of preferred stock is entitled to a priority in the dividends over the common stock, but in the absence of any agreement to the contrary, on dissolution of the corporation, the preferred stock shares equally with the common stock.

2. BUILDING AND LOAN ASSOCIATIONS—INSOLVENCY—COMMON AND PREFERRED STOCK.

A building and loan association issued one class of stock for full paid and nonassessable preferred shares, entitling the holder to a semiannual dividend until the date of the last coupon, when the face value of the certificate was to be paid.   The certificate was indorsed "secured by trust deeds and mortgages."   The articles of incorporation provided that stock on which dividends were paid in cash should be preferred stock.   No trust deeds or mortgages were in fact set aside to secure the same.   *Held*, on dissolution for insolvency and distribution of the assets of the association, the holders of preferred stock were not entitled to preference.

Action by the people against the New York Building-Loan Banking Company.   Motion to confirm referee's report No. 4, determined.

Edward Menocal, for holders of Class D, 1896 stock.

Julius M. Mayer, Atty. Gen., and Chas. W. Dayton (Alfred L. Becker, of counsel), for receiver.

William L. Tierney, Chas. R. Hall, Chas. C. Cormany, and John Aitken, for various stockholders.

BLANCHARD, J. This is a motion to confirm the referee's report herein, designated "Interlocutory Report No. 4," holding that Class D, 1896 stock, issued by the defendant corporation, is preferred, as to principal and interest, in payment from the assets now in possession of the receiver herein. The defendant corporation was organized as a membership corporation, for the transaction of the business of a building, mutual loan and accumulating fund associa-. tion. The corporation issued 13 classes of stock. Through' whatever plan the money was received by the company, the person paying was considered a purchaser of shares in the company, in order to comply with the statute under which the company was organized and the by-laws of the company. All dividends, interest or profits payable on any class were under the statute (Laws 1875, p. 634, c. 564, § 1), payable only from the earnings or profits of the company. Three general classes of shares were issued: (1) Installment shares, including Class A, Class AA and Class B, for which the purchaser paid in monthly installments; (2) full paid shares, including Class D, 1896 stock, for which the purchaser made an initial payment, sometimes at par and sometimes below par, upon the understanding that cumulative profits be credited on said shares for a term of years, eventually maturing the shares at a promised figure; (3) guarantied shares, intended as a guaranty of the performance of the company's obligations. Any person subscribing for a share of stock became a member of the corporation and entitled to all the benefits and subjects to all the liabilities of membership. The corporation, as was said in Preston v. Reinhart (Supreme Court, App. Div., Second Department) 96 N. Y. Supp. 851—

"is created purely for the purpose of transacting the business of a large group of people, and enabling them through mutual contributions to accomplish results which in their individual capacities they would be unable to accomplish. On the one hand, the corporation says to the man who wants a home, that if he will give a certain premium for the privilege, the corporation will advance the money necessary to place him in possession of the home; it will give him the present utility value of his investment and will enable him through a series of small payments to mature the stock which will pay the obligation, including the premium; while to the man who is seeking an investment, it says that it will undertake to collect all premuims, interest, fines, etc., placing them in a common fund for the purpose of bringing the value of his shares up to $100 at the earliest possible moment; and this is the inducement for the nonborrowing member to contribute his money to be presently used by the borrowing member. The latter, while in fact a borrower, is at the same time an investor; he is contributing his money, whether in dues upon his shares, in premiums or interest, to the maturing of his shares and the payment of his indebtedness, and he is doing this upon the implied promise of each member that he will live up to the requirements of his contract."

The learned referee appointed to take and state the accounts of the receiver of the defendant corporation for the period from September 14, 1903, to and including September 13, 1904, has reported that Class D, 1896 stock, is entitled to a preference as to principal as well as dividends in payment out of the assets in the hands of the receiver over all other classes of stock, which are not so situated, including the installment shares hereinbefore specified. Exceptions to the material findings and conclusions of this report have been filed by the receiver

and by certain holders of stock other than Class D, 1896. Upon the report and exceptions, therefore, the present motion is made. In People v. Metropolitan Mut. S. & L. Assn., 103 App. Div. 153, 162, 92 N. Y. Supp. 689, affirmed in 182 N. Y. 531, 75 N. E. 1132, the court stated the general principle relating to the distribution of assets of insolvent building-loan associations by quoting, with approval from 6 Cyclopedia of Law and Procedure, p. 165, in part as follows:

"The courts are inclined to treat the rights of all those holding the relation of stockholders as equal, and to allow no priorities in their claims. * * * But where the rules and by-laws of the association are held to govern the distribution in insolvency the same as when the association was a going concern, the rule may be otherwise."

The court added:

"To find that any particular class of stock should have preference in the distribution of assets in the case of insolvency, the articles of association should so state, in a plain and positive manner, free from ambiguity and doubt."

Similarity, in People v. N. Y. Building-Loan Banking Association (In Matter of the Claim of Lewis Baer, Supreme Court, App. Div., First Department, 97 N. Y. Supp. 82), the court said:

"Upon a building and loan association becoming insolvent all classes of shareholders are treated alike. * * * The rule with respect to distributing the assets of an insolvent building and loan association is [in the absence of a binding express agreement, which is not claimed to exist in the present case] that the debts and expenses are to be first paid, and then each shareholder is entitled to a dividend pro rata upon the amount which he has paid upon his stock. People v. Metropolitan Mutual S. & L. Assn., supra; Strohen v. Franklin Sav. Fund & Loan Assn., 115 Pa. 273, 8 Atl. 843; Christian's Appeal, 102 Pa. 184; Brown v. Archer, 62 Mo. App. 277."

In reaching the conclusions stated in his report the learned referee relied upon the language of the certificate of Class D, 1896 stock, and upon article 59 of the articles of association of the company. The certificate recited that $100 had been paid for "one fully paid and nonassessable preferred share, Class 'D' (1896), of the capital stock," and agreed that "in consideration of such payment the holder will be paid a semiannual cash dividend of $3 upon the presentation of the coupons hereto attached until the due-date of the last coupon, when the face value of this certificate shall become payable, if not previously paid." The articles of association and by-laws were incorporated into the certificate by reference. The certificate was indorsed, "secured by trust deeds and mortgages covering improved real estate located in the metropolitan district of New York City." In passing, it may be noted that no trust deeds or mortgages were in fact set aside as security for Class D, 1896 stock. Article 59 of the articles of association provides:

"All stock upon which dividends are paid in cash shall be preferred stock, unless otherwise expressed herein."

The words "preferred share" upon the face of the certificate of Class D, 1896 stock, do not establish a preference of the stock as to principal. In Bouvier's Law Dictionary (Rawle's Revision, vol. 2, pp. 1041, 1042) preferred stock is defined as follows:

"Preferred stock entitles the holder to a priority in the dividends or earnings over common stock. * * * In the absence of anything to the contrary, preferred stock shares equally with common stock upon a dissolution of the corporation (L. R., 5 Eq. 510); otherwise, if provided by the charter a statute, or by the contract (L. R., 20 Eq. 59)."

Notwithstanding the objection that the shares in a corporation like the defendant are of an anomalous nature, partaking in some respects of the character of a corporate debt, it seems that the meaning intended to be conveyed by these words, which obviously were borrowed from the nomenclature of the ordinary stock corporation, is the same that these words connote when applied to shares of stock in an ordinary stock corporation. In People v. Metropolitan Mut. S. & L. Assn., supra, a certificate of stock in a corporation similar to the defendant herein described the shares as "guarantied 6 per cent. income stock" of the maturity value of $100. The court held that it was doubtful whether the income was absolutely guarantied, and then considered what other meaning, if any, could be given to the word "guarantied." The court rejected the suggestion that the payment in any event of the principal of the stock was intended, and concluded that since the articles of association failed to explain the ambiguity, no preference could be allowed to these shares. The articles of association in the present case fail to disturb the prima facie meaning above stated of the words "preferred share," but rather confirm it. Article 59 merely repeats in paraphrase the ambiguous language of the certificate. Construed in the light of the general scheme and purpose of the defendant corporation, and in connection with the provisions relating to other classes of stock, it appears that the intention was to maintain the public credit of the association by first applying its profits to the payment of dividends which had been expressly made payable in cash, and then to apply the remainder of the profits, in proper sequence, to those classes of fully paid shares, installment shares, etc., the dividends of which were made payable, not in cash, but in credits, which were applied to the shares for the purpose of bringing them up to the value promised at maturity. Because of the surrounding circumstances, the false representation, regarding the security of Class D, 1896 stock, is deemed to have no bearing upon the marshaling of the assets of the company in its present insolvent condition. Since the language of the certificate of Class D, 1896 stock, and the articles of association relating thereto, are held not to describe the stock as preferred, in respect to principal, it becomes unnecessary to determine whether the defendant corporation had power to make such a preference, or whether the preference could be made effective in case of insolvency. The exceptions to each and every finding of fact and conclusion of law contained in the report of the learned referee which tends to award a preference to Class D, 1896 stock, over other classes of stock not so situated, including the installment stocks, namely Class A, Class AA and Class B, are therefore sustained, and the report as thus modified is confirmed.

Ordered accordingly.