HERBERT LLOYD et al.

*v.*

PENNSYLVANIA ELECTRIC VEHICLE COMPANY.
(Appeal of Edgar A. Hellman.)

[Argued December 3d and 4th, 1908.   Decided March 1st, 1909.]

The General Corporation act of 1896 (*P. L. 1896 p. 277*), authorizes the creation of two or more kinds of stock, of such classes, with such designations, preferences and voting powers, or restriction or qualification thereof as shall be stated or expressed in the certificate of incorporation. A corporation organized under that act provided in its certificate for the creation of preferred stock "the holder thereof to receive and the company to pay a fixed yearly dividend of six per cent. before any dividend shall be set apart or paid on the general stock."—*Held*, that upon the winding up of the corporation the preferred stockholders were entitled only to the preference set forth in the certificate of incorporation and were not to be paid on account of the par value of their shares in preference to the common stockholders.

On appeal from a decree advised by Vice-Chancellor Leaming, whose opinion is reported in *73 N. J. Eq. (3 Buch.) 270.*

*Mr. Martin V. Bergen, Jr.,* and *Mr. Gilbert Collins,* for the trustees in liquidation.

*Mr. Sherrerd Depue,* for William H. Page, the respondent.

264    COURT OF ERRORS AND APPEALS.

Lloyd v. Penna. Electric Vehicle Co.    75 Eq.

*Mr. Louis Marshall* and *Mr. Edgar J. Kohler* (of the New York bar), *Mr. Morris Wolf* and *Mr. George J. Bergen* (on the brief), for the appellants.

The opinion of the court was delivered by

SWAYZE, J.

The question involved in this case is the distribution of a surplus remaining in the hands of the trustees in liquidation of the Pennsylvania Electric Vehicle Company after payment of the debts. The controversy is between the preferred stockholders, whose claims will absorb the whole surplus in case they are entitled to a preference in the distribution, and the common stockholders. The vice-chancellor decided in favor of the preferred stockholders.

The question to be decided is one of contract, and the contract of the preferred and common stockholders *inter sese* is determined by the provisions of the statute and of the certificate of incorporation. The sections of the statute that are material to the inquiry are sections 8, 18 and 86.

Section 8, as amended in 1898 (*P. L. 1898 p. 408*), requires that the certificate of incorporation shall set forth the amount of the authorized capital stock, the number of shares into which the same is divided, and the par value of each share, and if there be more than one class of stock created by the certificate of incorporation, a description of the different classes, with the terms on which the respective classes of stock are created.

Section 18 authorizes every corporation organized under the act to create two or more kinds of stock, of such classes, with such designations, preferences and voting powers or restrictions, or qualifications thereof as shall be stated and expressed in the certificate of incorporation, or in any certificate of amendment thereof. It provides that at no time shall the total amount of the preferred stock issued and outstanding exceed two-thirds of the capital stock paid for in cash or property, and such preferred stock may, if desired, be made subject to redemption at any time after three years from the issue thereof at a price not less than par, and the holders thereof shall be entitled to

receive, and the corporation shall be bound to pay thereon, dividends at such rates and on such conditions as shall be stated in the original or amended certificate of incorporation, not exceeding eight per centum. It also provides that in case of insolvency, the debts or other liabilities shall be paid in preference to the preferred stock.

The provision of the certificate of incorporation, as amended, is as follows:

"Forty thousand of said shares are to be preferred stock, the holder thereof to receive, and the company to pay, a fixed yearly dividend of six per cent. before any dividend shall be set apart or paid on the general stock."

The company was organized in 1899, pursuant to the act of 1896.

Section 86 of the present act is substantially the same as section 80 of the act of 1875. Sections 8 and 18 introduced new provisions, in that the former requires that the certificate of incorporation shall contain a description of the different classes, with the terms on which the respective classes of stock are created, in case more than one class of stock is created by the certificate; and the latter, which takes the place of section 25 of the act of 1875, authorizes the creation of more than two kinds of stock, with such designations, preferences and voting powers or restrictions or qualifications thereof as shall be stated and expressed in the certificate of incorporation.

It has been held, and may be regarded as entirely settled, that calling stock "preferred stock" does not of itself determine the rights of the holders, for the extent of the preference is to be determined by the terms of the contract. *McGregor* v. *Home Insurance Co., 33 N. J. Eq. (6 Stew.) 181; Elkins* v. *Camden and Atlantic Railroad Co., 36 N. J. Eq. (9 Stew.) 233.*

It was also said, upon equally good grounds in the *McGregor Case,* that preferred stock, in the absence of an express stipulation or direction to the contrary, simply gives the holder a right of preference in the division of profits, and not in the distribution of capital. The learned vice-chancellor cited as authority the opinion of Vice-Chancellor Maline in the case of *In re Lon-*

don India Rubber Co., L. R. 5 Eq. 519; 37 L. J. Eq. 235, and
of Sir George Jessel in Griffith v. Paget, L. R. 6 Ch. Div. 511;
46 L. J. Eq. 493. It was, however, held in the McGregor Case
that the terms of section 80 of the act of 1875, now section 86,
required that the preferred stockholders should be preferred in
the distribution of assets upon insolvency. It is unnecessary to
consider whether the opinion of the vice-chancellor in this
respect was, as Mr. Cook says (Cook Corp. § 278 note), a mere
dictum. We are satisfied that it has been acted upon as a cor-
rect statement of the law of the state, and that, if the legislature,
in the revision of the Corporation act in 1896, had done no more
than re-enact this provision, it would be necessary to hold, that
they had adopted the construction which had been put upon the
section sixteen years before. This, however, is not the situation
presented by the act of 1896, for that act contained the provi-
sions in section 8 and in section 18, that we have quoted. The
insertion of those provisions in the act indicates an intent upon
the part of the legislature to make some change in the then exist-
ing law. We think the change that they intended was to require
that all preferences or special privileges to be conferred upon
any class of stock be set forth in the certificate of incorporation.
If they did not intend this result, it would have been unneces-
sary to require, by section 8, that the certificate should set forth
the terms on which the respective classes of stock were created,
and it was probably because they intended that the stock should
not have any other preferences that in section 18, in attempting
to define the rights of preferred or special stockholders, they
limited the special rights or special restrictions to such prefer-
ences and voting powers or restrictions or qualifications thereof
"as shall be stated or expressed in the certificate of incorpora-
tion." The power to create preferred stock is granted by section
18, and it is granted upon the terms set forth in that section.
To enact that the stock should have such preference as is stated
or expressed in the certificate was equivalent to enacting that it
should have no other preferences upon the general principle of
interpretation that the expression of one thing is the exclusion
of another. The very fact that section 18 provided for more than
one class of preferred or special stock leads to the same conclu-

sion, for it can hardly be claimed that the rights of more than one kind of preferred stock would be determined by the language of section 86 standing alone. That section is a survival of legislation going back to the early days of corporations in this state, at a time when only one class of preferred stockholders was authorized. Such is not now the case. Under the present act it is possible, for example, to issue what are called sometimes "founders' shares." Unless the rights of such shares are determined by the certificate of incorporation, they cannot be determined by the provisions of section 86, and the same reasoning is applicable to other classes of shares (aside from the ordinary preferred shares) which are issued by modern corporations. We recognize the necessity of construing the several sections of the act so as to give effect to each and to all the language of each. We think that can well be done. Section 86 is still necessary, notwithstanding the changes made in 1896, in order to cover the case of corporations existing under special charters, or corporations under the general acts prior to 1896. A greater difficulty, perhaps, is presented by the provision of section 86, that the surplus funds after payment of creditors, costs, expenses and allowances and the preferred stockholders, shall be paid to the general stockholders proportionally according to their respective shares. It requires no strained construction, however, to hold that this provision as to the payment of preferred stockholders in preference to the general stockholders is a payment to them not of the par value of their stock but of the amount to which they are entitled as a preference by virtue of the contract contained in the certificate of incorporation. Section 86 does not say that the preferred stockholders shall be paid the par value of their stock with the unpaid dividends that may have accrued thereon. It requires only that the preferred stock shall be paid in preference to the general stockholders, and that means that they shall be paid so much, and so much only, as their contract gives them. The amount of the surplus to be paid to the general stockholders is not necessarily the amount that may be left after paying the preferred stockholders the par value of their stock. It may just as well mean the surplus that is left after paying them the amount to which they are entitled by their contract. Nor is any

268          COURT OF ERRORS AND APPEALS.

Lloyd v. Penna. Electric Vehicle Co.          75 Eq.

difficulty presented where the terms of the contract entitle the preferred stockholder to a preference in dividends only. In this case which, as Vice-Chancellor Van Fleet said, and as the authorities show, was the ordinary case in the absence of such a provision as that contained in section 86, the preferred stockholders and the general stockholders would share *pro rata* in the distribution of assets after the payment of dividends due the preferred stockholders. That such would be the rule is well illustrated by a thoroughly considered case in the English courts which presented the novel situation of a fund upon dissolution of a corporation sufficient to pay not only the debts and the amount invested by the preferred and common stockholders, but to leave a large surplus for distribution. In that case the preferred stock had been fully paid up to the extent of ten pounds per share. The common stock had been paid for only to the extent of three pounds ten shillings per ten pound share. It was held in the court of first instance and in the court of appeal that after paying to each preferred stockholder ten pounds per share, and to each common stockholder three pounds ten shillings per share, the surplus should be divided among all the stockholders, preferred and common, in proportion to the amount of money actually contributed by each. The common stockholders insisted that the whole of this surplus was profits, and that, as they were entitled to all of the profits after paying the five per cent. to the preferred stockholders, they were entitled to the whole of the fund. The court, however, held that this position was untenable, and that the rule contended for by the common stockholders applied only to annual profits, and not to the large profits arising from the sale of the property of the corporation. In this respect the decree was affirmed by the house of lords, but it was there held that the surplus should be divided among the stockholders in proportion to the number of shares held by each and not in proportion to the amount contributed by each. *In re Bridgewater Navigation Co., L. R. 39 Ch. Div. 1; 57 L. J. Ch. Div. 809; 14 App. Cas. 525; 59 L. J. Ch. Div. 122.* We see no reason why, if the case is ever presented, the same rule should not be applicable under section 86, and the amount to be paid to

the preferred stockholders in such a case would be, *first,* what they were entitled to under the certificate of organization, and *second,* their proportional share of the remaining assets. The surplus, after making that payment, would, by the terms of section 86, belong to the general stockholders.

Section 18 provides that in case of insolvency, the debts or other liabilities shall be paid in preference to the preferred stock. With our present notions of the character of stock, such a provision seems unnecessary, and, unless explained, it might be supposed that it implied that preferred stockholders were to be paid as creditors next after the debts. We think, however, that there is an explanation of the insertion of this provision in the act of 1875, growing out of the efforts that had been made in other jurisdictions to give preferred stock more the character of a security for money loaned than of an investment in the business, subject to the ordinary hazards. Attempts to give prefered stockholders the status of creditors rather than of shareholders are referred to in *Cook Corp. (3d ed.) 271.* Some of these efforts were directed to securing a dividend to the preferred stockholders whether profits were made or not; some were directed to securing him by way of mortgage. *Taft* v. *Hartford, Providence and Fishkill Railroad Co., 8 R. I. 310; Lockhart* v. *Van Alstein, 81 Mich. 76; Chaffee* v. *Rutland, &c., Railroad Co., 55 Vt. 110; Warren* v. *King, 108 U. S. 339; Miller* v. *Ratterman, 47 Ohio St. 141; 24 N. E. Rep. 496.* In view of these cases, it is not surprising that the legislature inserted the clause in question in the act of 1875, and has retained it in the act of 1896. The effect of it is to prevent the incorporators from giving the preferred stockholders a claim superior to that of creditors by an insertion of a provision to that effect in the certificate of organization, and in that respect this clause still serves a useful purpose.

It is important that investors in a corporation should be able to ascertain their rights by an examination of the certificate, and it was no doubt with that end in view that the legislature made the changes in the act of 1875, which now appear in section 8 and section 18. It is true, as was forcibly argued on behalf of the respondents, that it can hardly be that all of the

rights of preferred stockholders need be set forth in the certificate of organization, but this fact does not require that we should hold that the certificate of organization cannot limit such rights. Manifestly it can, for if it were not so it would be beyond the power of the incorporators to take away the right to a preference on distribution of assets conferred by section 86. Since the corporators have this power to limit the rights of preferred stockholders, the question in any particular case is whether they have in fact done so. When they have undertaken, as in this case, to set forth the preference to which preferred stock is entitled, we think that they must set forth that preference fully, and that, so far as they fail to express a preference, the preferred stock can have no other rights than the common stock.

The decree must be reversed, with costs, and the record remitted to the court of chancery for further proceedings therein in conformity with this opinion.

*For affirmance*—GARRISON, REED, TRENCHARD, VOORHEES—4.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, GRAY, DILL—9.