Moses E. Gaskill,

*vs.*

Gladys Belle Oil Company, a dissolved corporation of the State of Delaware.

*New Castle, May 22, 1929.*

*Charles F. Curley*, for the preferred stockholders.

*James H. Hughes, Jr.*, of the firm of Ward & Gray, opposed.

The Chancellor. In this matter the question presented is whether or not holders of preferred stock may receive out of the capital assets of the dissolved corporation payment in full of its par value together with all unpaid dividends in arrear before anything is received by the common stock.

The certificate of incorporation of the dissolved company provided for two kinds of stock—preferred and common. The only preference specified in the certificate as belonging to the preferred stock was set forth in the following language:

"The holders of the preferred stock shall be entitled to receive out of the surplus or net profits of the business of the corporation in each year cumulative dividends at the rate of twelve per centum (12%) per annum, and no more, payable quarterly, semi-annually or annually as the Board of Directors may from time to time determine."

The company was organized on February 14, 1919. On the nineteenth of the same month the certificate of incorporation was amended, but the preference belonging to the preferred stock was left as originally created. On the next day the subscribers to the capital stock held a special meeting for the purpose of amending the by-laws. At said meeting the by-laws were amended, *inter alia*, by providing as follows:

"*Section* 34. The certificates of stock of the corporation shall be numbered and shall be entered in the books of the corporation as they are issued. They shall exhibit the holder's name and number of shares, and shall be signed by the president or a vice-president, and the treasurer, or an assistant treasurer, or the secretary or an assistant secretary.

"The Two Million (2,000,000) shares of Preferred Stock of the par value of One ($1.00) Dollar per share, authority to issue which is conferred by the Certificate of Incorporation of this Company, shall be forever entitled to the special provisions and rights hereinafter set out in this By-Law, and the issuance of proper certificates of ownership of such preferred stock to purchasers thereof, and the acceptance of such certificates by such purchasers create and constitute a covenant between this company and the several owners of such preferred stock, in which the full faith and credit of this company is forever pledged to the complete performance of the following undertakings:—

"First: Each share of preferred stock shall entitle the owner thereof to the same voting privileges at all meetings of shareholders to which the owner of a share of common stock is entitled.

"Second: Before any dividend or dividends are declared and paid upon the common stock of this company, all owners of preferred stock shall be entitled to and shall receive out of the net earnings of the company, a fixed cumulative dividend at the rate of twelve (12%) per cent per annum, payable monthly.

"Third: In case any fiscal year a dividend or dividends exceeding twelve (12%) per cent shall be paid on the common stock of the company, the owners of preferred stock shall be entitled to and shall receive coincident with the payment of such dividend or dividends in excess of twelve (12%) per cent on the common stock an additional dividend or dividends equal to the excess over and above twelve (12%) per cent paid upon the common stock.

"Fourth: *In case of liquidation or dissolution, voluntary or involuntary,*

*the owners of preferred stock shall be paid in full, both the par value of their shares and any unpaid and accrued dividends thereon before any amounts whatever shall be distributed to the owners of common stock; and in case of liquidation or dissolution, the funds of the company available for distribution to shareholders shall be devoted—first: To the liquidation in full of Preferred Stock and all accrued and unpaid dividends as hereinbefore provided; secondly: To the liquidation of outstanding common stock plus an amount per share equal to the excess per share of dividends paid from the time of incorporation on preferred stock over and above the amount paid on the common stock; and thirdly: To a pro rata distribution of such funds among all shareholders, regardless of the class of stock held by them, share and share alike.*

"This By-Law, reciting the terms of the contract, existing between this Company and the several owners of its preferred stock, is by its adoption given the same force and effect as if it was a part of the Certificate of Incorporation of this Company, and same shall be repealed, amended or in any way altered only with the consent of the holders of two-thirds of the preferred stock of this Company."

It will thus be seen that whereas the extent of the preference which was allowed the preferred stock by the certificate of incorporation was the right to be paid cumulative dividends out of surplus or net earnings in each year, the by-laws undertook to give to the preferred stock certain other preferences which would arise upon liquidation and dissolution.

The preferences as defined in the by-laws were expressed on the face of the preferred stock certificates.

The claimant is demanding the full measure of preference assumed to be granted by the by-laws and the exceptants resist the demand on the ground that the exclusive source from which preferred stock is entitled to derive its preferential rights is the certificate of incorporation of the company, and that nowhere in the certificate can justification be found for the preference now claimed. The question therefore is whether or not a by-law provision defining preferential rights which are broader than those defined in the certificate of incorporation is valid and binding under our statute.

That the preference allowed by the certificate is different from that assumed to be allowed by the by-laws can admit of no doubt. The former is as to dividends declarable only out of surplus or net profits in each year. If there is no surplus, or there are no net earnings, as is the case here, there is no fund available

to which the designated preference can attach itself. To allow the preference in such a case to fasten itself upon capital assets would be to allow the preference a wider privilege than the contract defining it specifies. This is not permissible for the obvious reason that with respect to capital all outstanding stock, whatever its source, is entitled, in the absence of statute or of a contract provision to the contrary, to a ratable participation in the distribution of the capital to which all have contributed. *Lloyd v. Pennsylvania Electric Vehicle Co.*, 75 *N. J. Eq.* 263, 72 *A.* 16, 21 *L. R. A.* (*N. S.*) 228, 138 *Am. St. Rep.* 557, 20 *Ann. Cas.* 119; *In re London India Rubber Co.*, *L. R.* 5 *Eq.* 519; *Birch v. Cropper*, 14 *App. Cas.* 525; *In re Accrington Corporation Steam Tramways Co.*, 2 *Ch.* 40, 101 *Law T.* (*N. S.*) 99; *People v. New York Bldg. Loan Co.*, 50 *Misc. Rep.* 23, 100 *N. Y. S.* 459. The cases cited by the claimant which bear on the point, instead of being opposed to this proposition, recognize it as the law. For instance, in *McGregor v. Home Ins. Co.*, 33 *N. J. Eq.* 181, Vice-Chancellor Van Fleet took pains to state that he thought "it must be admitted, according to the general current of authority, that preferred stock, in the absence of an express stipulation or direction to the contrary, simply gives the holder a right of preference in the division of profits, and not in the distribution of capital." The only reason why the rule thus recognized by him as the law was not the controlling rule in the case before him was that the statute under which the corporation was created was construed as enacting otherwise. And in *Hamlin v. Toledo, etc., R. Co.*, (*C. C. A.*) 78 *F.* 664, 36 *L. R. A.* 826, and in *Toledo etc., R. Co. v. Continental Trust Co.*, (*C. C. A.*) 95 *F.* 497, cited by the claimant, it was observed that "ordinarily preferred stock is entitled to no preference over other stock, in relation to capital." The existence of an express agreement giving a preference on capital, however, not prohibited by local law or by the charter, made the general rule inapplicable in those cases.

The preferred stock in this case, according as it is defined in the certificate of incorporation, must therefore be taken as a stock which has no preferential right to be paid off out of the capital before anything is received in liquidation by the common stock.

But, if we look to *Section* 34 of the by-laws for our definition of the rights of the preferred stock, we find it has such a preferential right.

I therefore repeat that the question presented is whether or not a by-law provision defining preferential rights which are broader than those defined in the certificate of incorporation is valid and binding under our statute.

The general act (*Revised Code* 1915, *c.* 65) under which the dissolved company was incorporated is quite explicit in its provisions touching the kinds of stock which may be issued. In *Paragraph* 4 of *Section* 5 it requires that the certificate of incorporation shall set forth, *inter alia*, a description of the different classes of stock if there be more than one and the terms on which the respective classes are issued. And *Section* 13 in conferring power to issue stock of various kinds provides as follows:

> "Every corporation shall have power to create two or more classes of stock, with such designations, preferences and voting powers, or restrictions or qualifications thereof, as shall be stated and expressed in the Certificate of Incorporation. * * * Unless its original or amended charter or certificate of incorporation shall so provide, no corporation shall create preferred stock." (*Laws* 1917 [29 *Del. Laws*] *pp.* 324, 325, § 7.)

It is elementary that the rights of stockholders are contract rights. The mere word "preferred" unless it is supplemented by a definition of its significance conveys no special meaning. The holder of preferred stock must therefore refer to the appropriate language of the corporate contract for the ascertainment of his rights. The nub of the present contention is—where may such appropriate language be found? The exceptants say in the certificate of incorporation and nowhere else. In this I think they are correct. The statute, by providing that the preferred stock which corporations created under it may issue shall possess such preferences as are stated in the certificate of incorporation, by obvious inference must be taken to mean that unless the preferences are stated in the certificate of incorporation, they shall not exist. The Court of Errors and Appeals of New Jersey in *Lloyd, et al. v. Pennsylvania Electric Vehicle Co., et al.*, 75 *N. J. Eq.* 263, 72 *A.* 16, 21 *L. R. A.* (*N. S.*) 228, 138 *Am. St. Rep.* 557, 20 *Ann. Cas.* 119, was of the same opinion in construing a similar

provision of the New Jersey statute. After observing that the question was one of contract between the preferred and common stockholders *inter sese*, and that the contract was to be determined by the provisions of the statute and of the certificate of incorporation, the court proceeded as follows:

"The power to create preferred stock is granted in § 18, and it is granted upon the terms set forth in that section. To enact that the stock should have such preference as is stated or expressed in the certificate was equivalent to enacting that it should have no other preferences upon the general principle of interpretation that the expression of one thing is the exclusion of another."

The last sentence in the quotation from *Section* 13 of our Act (*supra*) is of significance. It provides that unless preferred stock is created in the original or amended certificate, no corporation may issue it. Certainly in the light of such a provision, no corporation can create preferred stock by a by-law provision. In substance, did not this corporation by enacting *Section* 34 of its by-laws undertake to create a new preferred stock? That is what it did, even though the form of its action might be described as cast in the shape of an alteration of the existing lawfully authorized preferred stock. If the by-law provision be a valid one, the result to all practical purposes was that it repealed the charter provision dealing with preferred stock, destroyed that stock, and created a new preferred stock having different features and enjoying larger rights. Had the certificate created no preferred stock, it is obvious that the by-laws could not have created the preferred stock which their *Section* 34 describes. *A fortiori* it seems to me it could not have created the same sort of stock when to do so it would be necessary to alter a provision of the certificate of incorporation bearing on the subject.

The purpose of the statutory provision serves a sound public policy which is that those who contemplate the acquisition of stock in Delaware corporations may have a sure and certain place to which they may resort for authoritative information touching the capital structure of the concern into which they contemplate buying. That place is the office of the Secretary of State and the recording offices of the counties, where certificates containing final information descriptive of the quantities and kinds of stock authorized to be issued, are respectively filed and

recorded. If information of this important kind is not obtainable from some exclusive source readily available, it is manifest that obscurity of the most aggravated type would envelop all the issues of corporate stocks. If by-laws, which of course are not open to public inspection, may be permitted to phrase the contracts upon which stocks may be issued, why may not resolutions and motions do so? To ask such a question is, from the mere viewpoint of public policy, to answer it. And it must be that the Legislature in writing *Section* 13 into the act intended thereby to satisfy the requirements of a sound public policy which, with respect to corporate creatures, demands that recourse to one and only one source shall be had for definite information touching such vital matters as the kinds, quantities, relative rights, preferences and privileges of stocks which its creature may issue.

The claimant contends that *Section* 34 of the by-laws was adopted by the unanimous consent of all the then existing stockholders of the corporation and, having been so adopted, the corporation as well as all subsequent stockholders are estopped from challenging its validity. That stockholders may by unanimous consent do many things which are binding and but for which assent would not be valid, may be true. Yet even so, it does not follow that in such a matter as this, they can over-ride the law. Here they undertook to do something which there was a lawful way to do. They did not do it however in the way the law requires.

The unanimous consent which is said to have authorized the creation of the preferences by by-law action is ineffectual to do so in the face of such statutory provisions as are found in the Delaware act. Such authorization if valid can only be so on the theory that it is competent for the stockholders to waive the statutory requirement that the preferences shall be such as are specified in the certificate of incorporation. That the doctrine of waiver can operate to that extent, I think is clearly contrary to Delaware authority.

In *Brooks v. State*, 3 *Boyce*, 1, 79 *A.* 790, 51 *L. R. A.* (*N. S.*) 1126, *Ann. Cas.* 1915 *A*, 1133, the question was as to the right of stockholders to agree that the right to vote given by the constitution to each share of stock should be abrogated by a provi-

sion in the certificate of incorporation adopted of course by the unanimous consent of the incorporators to the effect that stock of a certain class should not vote. In the course of its opinion the Supreme Court used this language:

"A by-law that restricts or alters the voting power of stock of a corporation as established by the law of its charter, is of course void. * * *

"A provision in a charter of a corporation, giving to its stock a voting power different from that contemplated by the statute under which it was created, is likewise void. * * *

"A statute that authorizes a corporation to give to its stock a voting power different from that prescribed by the constitution is equally void."

Thus with respect to corporations the law of their being is characterized by gradation of authority. That which is superior overrides all below it in rank. The by-laws must succumb to the superior authority of the charter; the charter if it conflicts with the statute must give way; and the statute, if it conflicts with the constitution, is void. In the instant case, the claimant seeks not only to establish the authority of a by-law against the superior authority of the charter, but to leap an additional hurdle and establish it against the yet more superior authority of the statute.

Another case in the Supreme Court which bears on the question before me is that of *Standard Scale & Supply Corp. v. Chappel, post p.* 331, 141 *A.* 191. This was another case involving the right of stock to vote. Whereas in the *Brooks Case, supra,* the conflict was between a charter and the constitution, in this one it was between a unanimous agreement of stockholders whereby voting restrictions were written on the face of the stock certificate and the certificate of incorporation. The Supreme Court, it is true, questioned towards the end of its opinion whether the holder of the certificate had ever agreed to the restriction. But it predicated its view as to the law upon the assumption that the agreement had been made. I think it is manifest from the opinion that the court held that an agreement, even though unanimously entered into by the stockholders, that stock should not enjoy a right which it was entitled to enjoy under the corporation's charter, is void. After citing the *Brooks Case,* it quoted with approval the following from Judge Morris' opinion filed in the

District Court of the United States for the District of Delaware in the case of *Hodgman v. Atlantic Refining Co., (D. C.) 2 F. (2d)* 893:

"The rights conferred by stock ownership in a Delaware corporation are to be determined as a matter of law from the Constitution and the laws of * * * Delaware and the charter of the company. Those rights cannot be increased, diminished, or otherwise altered by a contract between the corporation and the person to whom the shares are issued."

It may be argued that the cases above referred to in the Supreme Court of Delaware deal with an attempt to take away a right conferred by the Constitution or statute, whereas in the instant case the attempt is not to take away from the preferred stock a right given to it under the statute, but to add thereto additional rights, and hence the cited cases are not in point. To this suggestion two replies are obvious. First, the question is one of whether or not agreements may be made in alteration of rights which are founded in constitutional and statutory enactment, and this question would seem to be entirely disassociated from whether such alteration is by way of subtraction or addition. And second, the common stock has a right to be burdened to no greater extent by the preferred's preferences than the contract as expressed in its statutorily designated repository, namely, the certificate of incorporation, specifies. If you say that the preferred's preferences are enlarged, as a corollary you must say that the common's burdens are increased and its rights curtailed. Therefore, to the extent that the by-laws undertake to enlarge the contract rights of the preferred, they restrict the contract rights of the common. Thus, upon analysis, it appears that the question which the instant case presents is after all one which involves, as did the questions in the cases cited from the Supreme Court, the lawfulness of an attempt to subtract from a stock rights that are given to it by the law.

My conclusion is that if the stockholders wish to confer special rights upon a given class of stock they must express their wish in the instrument which the statute designates as the place for its recordation. That place is the certificate of incorporation. Of course if there were no statute regulating the matter, a different situation would arise. Such appears to have been the case in

*Stafford v. Produce Exchange Banking Co.*, 61 *Ohio St.* 160, 55 *N. E.* 162, 76 *Am. St. Rep.* 371, cited by the claimant.

The foregoing answers the claim of the preferred stockholder to be repaid out of capital assets the full par value of his stock before anything is paid to the common stock.

The preferred stock seeks also to be paid all arrearages of dividends before the common stock receives anything. Inasmuch as the assets contain no net earnings from which dividends were withheld, the arrearages, if paid, must come out of capital. To pay them out of capital would not be permissible for the reason that the certificate of incorporation in its specification of preferences does not make the unpaid dividends a charge on the capital assets.

Order accordingly.