**ROYAL INDUSTRIES, INC., a Delaware Corporation, Plaintiff,**

v.

**MONOGRAM INDUSTRIES, INC., a Delaware Corporation, Defendant.**

Court of Chancery of Delaware, New Castle.

Submitted Nov. 5, 1976.

Decided Nov. 10, 1976.

S. Samuel Arsht, Lewis S. Black, Jr., and Lawrence C. Ashby, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Rodman Ward, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, for defendant.

MARVEL, Chancellor.

The defendant Monogram proposes to offer to purchase from their present holders 3,200,000 shares or 55% of the common stock of the plaintiff Royal for a cash payment of $11 per share (a price allegedly 42% in excess of the current market price for such stock), such offer to become effective, unless restrained, on November 11, 1976. Both corporations, although incorporated in Delaware, have their principal places of business in California, plaintiff's in Pasadena and defendant's in Santa Monica.

Prior to May 1, 1976, the effective date of 8 Del.C., § 203, there was no statutory impediment in the Delaware Corporation Law to the free right of an individual or of a corporation or other entity to solicit tenders of stock of another corporation and to offer to buy some or all of the stock so tendered by the holders of stock of such other corporation, and many solicitations have been made by managements of Delaware corporations to stockholders of other corporations by means of an offer published in the press as well as through written notice to the offices of such other corporations inviting such stockholders to tender their share for purchase at a stipulated price on extremely short notice, making it difficult, if not impossible, for the target corporations properly to advise their stockholders or for such stockholders to decide independently whether or not to make a tender, being in many instances faced with a Hobson's choice of either selling out under undue pressure or becoming a member of a small minority stockholders' group. In some instances the target corporation for one reason or another has

acquiesced in such take-overs with the result that the stockholders themselves have at times been victimized by both the offeror and their own corporation. The abuses inherent in such uncontrolled free enterprise led to the enactment of 8 Del.C., § 203, which, in essence, requires an offering corporation or person to give notice of its or his intent to solicit tenders of stock to the target corporation at least twenty days before such offer is to be open and to keep such offer open for a minimum of twenty days.

I am satisfied in the case at bar on the basis of the present record that on October 21, 1976 not only did Monogram publicly announce in the news media its intention to make a cash tender offer to buy up to 3,200,000 shares of Royal common stock, but that after futile efforts on October 20, 1976 to inform a responsible officer of Royal of defendant's intentions along with the terms of its proposed offer for tenders, on October 21, 1976 at approximately 2:00 p. m. in the office of plaintiff's attorney, Mr. Robert Rifkind, at a meeting attended by Mr. John R. Johnson, president of Royal, not only was Mr. Johnson personally informed of Royal's intentions by the delivery of a letter clearly stating the plan of Monogram to purchase 3,200,000 shares of common stock of plaintiff as well as the terms of such proposed purchases, but he was also furnished with three copies of Monogram's federally required statement, 13D, which has to do with offers for tenders, to which was attached detailed terms of defendant's offer. Furthermore, two copies of Monogram's consolidated annual reports to its stockholders for the fiscal years ending June 30, 1974, 1975 and 1976 were also furnished to Mr. Johnson, such reports containing consolidated balance sheets as of the end of and income statements for each of the year-ends inasmuch as Monogram operates its business through several subsidiaries.

Plaintiff contends, however, and it is apparently conceded, that it was not until October 26, 1976 that plaintiff received through the mails at its principal place of business in California a copy of Monogram's 13D form in purported compliance with the terms of 8 Del.C. § 203, which calls for a written statement of an offeror's intention to be delivered either at its registered office in Delaware or at its principal place of business. It is also contended by plaintiff that the 13D federal form delivered to Mr. Johnson at Mr. Rifkind's office on October 21, 1976, did not contain either a copy of the balance sheet of Monogram for its last fiscal year or copies of Monogram's income statements for its three previous fiscal years, as required by 8 Del.C. § 203. Plaintiff finally complains that Monogram's offer does not state unequivocally the date on which Monogram may first purchase plaintiff's tendered securities, the offer stating that it would take down and purchase shares of the plaintiff corporation " * * * as soon as possible after * * * " 10:00 a. m. on December 2, 1976.

8 Del.C., § 203(a)(1) provides as follows:

"(a) No offeror shall make a tender offer unless:

"(1) Not less than 20 nor more than 60 days before the date the tender offer is to be made, the offeror shall deliver to the corporation whose equity securities are to be subject to the tender offer, at its registered office in this State or at its principal place of business, a written statement of offeror's intention to make the tender offer. The statement shall include the name and address of the offeror and of each director and principal officer of the offeror; a description of the equity securities to be purchased and the consideration to be offered; the duration of the offer; the date on which the offeror may first purchase tendered securities; the amount or number of equity securities to be purchased or the manner in which such number or amount will be determined; whether the offeror will unconditionally accept all or any part

of the equity securities tendered and, if not, upon what conditions acceptance will be made; the number or amount of any equity securities of the corporation owned beneficially by the offeror and any associate of the offeror as of the date of the delivery of the statement; a description of any contract, agreement or understanding to which the offeror or any associate of the offeror is a party with respect to the ownership, voting rights or any other interest in any equity security of the corporation; and, if the offeror permits [1] the purchase of less than all the outstanding equity securities issued by the corporation, copies of a balance sheet of the offeror as of the end of its last fiscal year and of its income statements for the three fiscal years preceding the offer:"

In seeking an answer to the question before the Court, namely whether or not 8 Del.C., § 203 must be strictly and literally construed, it must be borne in mind, first of all, that the strength of the Delaware Corporation Law lies in its orderliness, stability, and predictability under Court supervision unhampered by administrative red tape. However, I believe a distinction must be drawn between the statutes involved in those cases concerned with complex inter and intra corporate transactions and contrasted with those in which the statute pertains to notice or knowledge at least where the rights of stockholders are concerned.

In the former line of cases this Court has insisted on strict compliance with the letter of the law, *Federal United Corporation v. Havender*, 24 Del.Ch. 318, 11 A.2d 331 (1940), *Finch v. Warrior Cement Corp.*, 16 Del.Ch. 44, 141 A. 54 (1928) and *Drug, Inc. v. Hunt*, Del.Supr., 5 W.W. Harr. 339, 168 A. 87 (1933). Furthermore, when time is clearly of the essence under the terms of a statute, a late filing will not be judicially condoned, *Loeb & Co. v. Hil-*

*ton Hotels Corp.*, Del.Supr., 222 A.2d 789 (1966), and *Schneyer v. Schenandoah Oil Corp.*, Del.Ch., 316 A.2d 570 (1974). Finally, inasmuch as a preference creation must be made by charter amendment such a corporate act may not be accomplished by by-law even with the unanimous vote of the stockholders. *Gaskill v. Gladys Bell Oil Co.*, 16 Del.Ch. 289, 146 A. 337 (1929).

On the other hand, where the purpose of a statute is to give notice and such result has been accomplished, its application has been liberally applied for the benefit of stockholders, *Raab v. Villager Industries, Inc.*, Del.Supr., 355 A.2d 888, (1976) in which the Court stated:

"The requirements of § 262(b) are to be liberally construed for the protection of objecting stockholders, within the boundaries of orderly corporate procedures and the purpose of the requirement. *Salt Dome Oil Corporation v. Schenck*, 28 Del.Ch. 433, 41 A.2d 583 (1945); *Carl M. Loeb Rhoades & Co. v. Hilton Hotels Corp.*, Del.Supr., 222 A.2d 789 (1966). Considering the limited notice purpose of the objection, we find no reasonable basis for a requirement that an objection be signed by both husband and wife as joint stockholders. We hold that an objection signed by one spouse was sufficient pre-vote notice to the corporation that the shares thus held possibly would be voted against the merger, thus fulfilling the purpose of the objection requirement of the Statute."

In the same case an objection by a record holder acting under instructions of the beneficial owner of shares was held to be sufficient under the statute in issue, the Court stating:

"We think that the objection to this claim is hypertechnical. The purpose of the statutory objection was fulfilled in that Villager had adequate prior notice of possible dissent. The rule of liberal

---

[1]. This provision accordingly applies here to defendant inasmuch as it is seeking 55% of plaintiff's stock.

interpretation requires that this claim be allowed. Accordingly, the dismissal of the claim below is reversed."

Compare *Celanese Corporation of America v. Mayor and Council of Wilmington,* Del. Super., 7 Terry 114, 78 A.2d 249 (1950).

In the case at bar, however, not only are the rights of stockholders of the target corporation involved under a statute whose terms govern the offer here proposed to be made to buy their stock at a 42% premium over market but also the right of the target corporation itself to oppose lawfully and as vigorously as possible a proposed takeover of a majority of its stock.

Passing over for the present the factual disputes which can be expected to arise in a case such as this as a result of a slavish observance of federal law with a concomitant disregard of the clear directions of a State statute and assuming but not deciding that the written notice delivered to Mr. Johnson on October 21, 1976 was legally sufficient to alert plaintiff to defendant's intentions and that actual knowledge may at times be deemed to be the equivalent or an acceptable substitute for statutory notice, I am convinced that in the present case that defendant failed to comply with the statute in another and fatal manner.

The provisions of 8 Del.C., § 203 require in the case of an offer such as the one at bar that the offeror furnish to the registered office or the principal place of business of the target corporation copies of a balance sheet of the offeror as of the end of its last fiscal year and of its income statement for the three fiscal years preceding the offer. The purpose of these provisions is evidently to apprise the target corporation of the financial status of the offeror and to serve as a guide to the target corporation in its dealings with its own stockholders on the question as to whether or not to accept the offer. Having considered them, I am satisfied that the consolidated balance sheets and income statements furnished to Mr. Johnson by defendant on October 21, 1976 were not the equivalent of Monogram's own balance sheet and income statements. Significantly, the papers specified in the statute are those required to establish the lawfulness of a dividend, the propriety of the purchase or redemption of shares of stock and the establishment of the existence of a surplus, information which, in the clear language of the statute, was intended by the Legislature to be required to be furnished to the management of a target corporation in connection with an invitation for tenders of stock such as the one here proposed. And the fact that the consolidated financial statements which were furnished allegedly disclose more and different information than the offeror's own financial reports required by the statute would have disclosed does not change the clear wording of the statute here in issue. A statute may not be amended by this Court, such function being the perogative of the Legislature. Finally, I am not persuaded that any of defendant's affirmative defenses are applicable here under the facts and circumstances presented.

Being persuaded that plaintiff has succeeded on final hearing because of the clear terms of 8 Del.C., § 203 and defendant's failure to furnish the precise financial documents specified in the statute, a final order will be entered effective until further order enjoining defendant from commencing its proposed tender offer with respect to plaintiff's issue in outstanding common stock until defendant shall have complied with 8 Del.C., § 203.

An appropriate form of order may be submitted on notice.