**George R. CANNON, Plaintiff,**

v.

**The DENVER TRAMWAY CORPORATION, Defendant.**

Court of Chancery of Delaware,
New Castle.

Submitted Oct. 10, 1976.

Decided Jan. 5, 1977.

Reargument Denied Jan. 24, 1977.

Blaine T. Phillips of Potter, Anderson & Corroon, Wilmington, for the trustee in dissolution.

Jan S. Black of Prickett, Ward, Burt & Sanders, Wilmington, for certain former first preferred shareholders.

Lewis S. Black, Jr., and Craig B. Smith of Morris, Nichols, Arsht & Tunnell, Wilmington, for First Nat. Bank of Denver as trustee for certain former preferred and first preferred stockholders.

E. Norman Veasey and R. Franklin Balotti of Richards, Layton & Finger, Wilmington, for certain former common shareholders.

MARVEL, Chancellor.

Petitioner, who is trustee in dissolution of the Denver Tramway Corporation, a dissolved corporation, seeks instructions from this Court as to an appropriate distribution of corporate funds over and above amounts required to pay corporate obligations. Denver Tramway was formerly engaged in the business of furnishing public transportation in Denver, Colorado. However, in light of the imminence of condemnation proceedings brought by the City of Denver, the corporation's stockholders adopted a plan of liquidation on March 5, 1971, authorizing the liquidation of Tramway's assets, payment of its debts and other obligations and the distribution of the remaining corporate proceeds to its former stockholders. The transfer of Tramway's assets to the trustee was effectuated on March 1, 1972, and at the time of its dissolution Denver Tramway had outstanding three classes of stock, namely preferred, first preferred, and common. Both classes of preferred stock were entitled to liquidation preferences under the terms of the corporation's certificate of incorporation in the sum of $175.375 per share for preferred shareholders and $85.00 per share for first preferred shareholders, the directors having made a number of liquidating distributions which had reduced the total amount of liquidation preferences outstanding prior to the transfer of corporate assets to the trustee. Thereafter, three liquidating distributions were made by the trustee between November 19, 1973 and October 1, 1975.

Petitioner reports that all preferential liquidation payments have been completed but that no payments have as yet been made to the former holders of common shares. A further distribution to stockholders in the amount of $200,000 is now appropriate according to the trustee, such sum representing interest income earned on the assets of Denver Tramway in the hands of the trustee. The trustee now seeks instructions as to which class or classes of former shareholders should be allowed to participate in the proposed distribution, and the former preferred shareholders contend that they should be allowed to participate in such proposed distribution. Former holders of common shares argue, however, that they should receive the entire amount now to be distributed to the exclusion of the former holders of preferred stock.

The common shareholders rely on the rule of law that preferred shareholders are limited upon dissolution to the contractual preference set forth in their corporation's certificate of incorporation and are therefore not entitled to participate in distribution of the residue of corporate assets to common shareholders after payment of liquidation preferences, *Mohawk Carpet Mills v. Delaware Rayon Co.*, 35 Del.Ch. 51, 110

A.2d 305 (1954), and compare *Penington v. Commonwealth Hotel Const. Co.,* 17 Del.Ch. 188, 151 A. 228 (1930), *Gaskill v. Gladys Belle Oil Co.,* 16 Del.Ch. 289, 146 A. 337 (1929) and see Folk, The Delaware General Corporation Law, p. 443 (1972).

And while not denying the existence of such a rule as a general principle, the preferred shareholders contend that it is not applicable here, the real issue being whether or not the preferred stockholders, as beneficiaries of a trust fund created by this Court, are entitled to receive a fair share of the income earned on assets held by the trustee for their benefit. In other words, the preferred stockholders contend that since the transfer of assets by the corporation to the trustee on March 1, 1972, such trustee has held such proceeds for the benefit of all former stockholders of Denver Tramway and that the interest income earned by the trustee must be allocated according to the several equitable interests existing in the funds in question, citing Part IV, (3)(c) of the plan of liquidation, which provides in part:

> "From and after the date of appointment of such trustee or receiver, Tramway shall have no interest of any character in and to any funds, assets or properties remaining on hand, and thereafter all of such funds, assets, and properties shall be held solely for the benefit of the stockholders of Tramway, subject only to unsatisfied claims, obligations and expenses."

Next, the order of this Court creating the office of trustee directs that the trustee:

> " . . . . shall hold and deal with all such funds, assets and properties for the benefit of the stockholders of defendant, subject only to unsatisfied claims, obligations and expenses . . . "

Furthermore, the document transferring assets from the corporation to the trustee dated March 1, 1972 similarly recognizes the *trustee's obligation,* pursuant to the Court's order, to act on behalf of all stockholders and states that following the transfer " * * * the corporation shall have no

right, title or interest * * * " in any of the assets so transferred. In addition, the trustee's declaration and acknowledgment required by this Court's order also states that:

> " . . . . W. A. Alexander, Trustee in Dissolution . . . and acting pursuant to and in compliance with the provisions of the order, does hereby declare and acknowledge that he holds for George R. Cannon and other stockholders of the corporation or record, their successors and assigns, as their interests may appear, the beneficial interests in all . . . . . assets of the corporation, tangible and intangible . . . "

Finally, the preferred shareholders point out that the transfer of corporate assets to the trustee was primarily motivated by a wish to obtain certain tax advantages found under Section 337 of the Internal Revenue Code, which requires distribution of the proceeds of all assets to stockholders within twelve months after dissolution, the plan here in issue requiring distribution to the trustee for the benefit of stockholders in the event that a complete liquidating distribution cannot be made directly to the stockholders within the statutory period in order to gain the tax advantage above noted.

■ The documents referred to above are not only essential to the creation of the office of trustee but also determine the character of the petition. I conclude that the language employed by the Court in its order and by the persons acting on behalf of Tramway in effectuating the transfer of assets is unambiguous. In other words, the order of the Court to the effect that the trustee is to hold all funds for the benefit of the stockholders is susceptible of only one meaning, namely that the relationship between the trustee and the stockholders is one of fiduciary character under which the legal title to the assets is to be held by the trustee while the beneficial interest in such assets is to rest with the former shareholders, such being the fundamental nature of a trust. See *Fulweiler v. Spruance,* 43 Del.Ch. 196, 222 A.2d 555 (1966), and com-

pare *Eberhardt v. Christiana Window Glass Co.,* 9 Del.Ch. 284, 81 A. 774 (1911).

Moreover, the Court's conclusion that the relationship here existing between the petitioner and the shareholders is essentially that of a trust to which trust law should be applied is consistent with several rulings made under the Internal Revenue Code. See *In Re Ellis,* Haw.Supr., 487 P.2d 286, 289 (1971), which held that the property of a dissolved corporation belongs to those persons who were stockholders at the time of its dissolution notwithstanding the fact that title to such assets rest in a trustee for the purposes of liquidation, and compare 16A Fletcher, Cyclopedia of Corporations Section 8178, p. 420 (1962).

■ Thus, since the trustee holds the proceeds of Denver Tramway's assets for the benefit of the stockholders, income earned by investment of the fund must be allocated among former stockholders in proportion to their equitable interests therein. Compare *Berry v. McCourt,* 1 Ohio App.2d 172, 204 N.E.2d 235 (1965), *Griffin v. Dyett,* 262 A.D. 368, 29 N.Y.S.2d 486 (1941), Restatement of Trusts 2d Section 183 (1959). A trustee must deal impartially with the several beneficiaries of a trust, *Cahall v. Lofland,* 12 Del.Ch. 125, 107 A. 769 (1919).

■ I further conclude that the duty of the trustee to maintain reserves for contingent liabilities does not militate against the fact that in a liquidation receivership the actual ownership interest in corporate assets rests in the former shareholders. Income earned on the fund therefore inures to the benefit of all shareholders. Restatement 2d of Trusts, Section 182 comment (6) (1959).

■ Furthermore, because as a result of the transfer of assets to the trustee on March 1, 1972 a fund has been held for the benefit of all former shareholders, the fact that certain assets have existed in a form incapable of direct distribution and the further fact that reserves for contingencies have been maintained, in my opinion, in no way detracts from the fact that the shareholders have from the inception of this trusteeship been the equitable owners of such assets and are entitled to income earned in excess of liabilities.

I conclude that the preference shareholders should receive their proportionate share of the income actually generated, reduced by their proportionate share of trust expenses. They are accordingly entitled to that portion of the income representing their interest in the trust earned between March 1, 1972, the date of transfer of the assets to the trustee, and November 30, 1975, the date of final payment by the trustee to the preferred shareholders of sums representing liquidation preferences. However, in light of the need to maintain reserves for the claims of creditors, the trustee must exercise his discretion as to how much income is to be distributed at the present time.

In conclusion I am satisfied that under the terms of the order of this Court dated February 15, 1972 and the transfer document dated March 1, 1972, by which the transfer of assets to the trustee was accomplished, that the trustee holds the assets formerly owned by Denver Tramway in trust for the benefit of all former stockholders of Denver Tramway as of the time of corporate dissolution. Income produced by these assets is thus held for the benefit of all corporate shareholders in proportion to their respective interests in the trust fund.

An order may be presented on notice providing for a distribution of available income as above directed.

## ON REARGUMENT

Counsel for former holders of shares of first preferred stock of Denver Tramway have filed a motion for clarification, or, in the alternative, for reargument of two issues which are allegedly not clearly defined in this Court's opinion of January 5, 1977, a ruling which had to do with instructions to the trustee in dissolution of Denver Tram-

way as to how he should properly dispose of certain interest income earned on funds presently in his custody.

The first preferred stockholders, first of all, ask that the Court clarify its January 7, 1977 ruling by stating unequivocally that such preferred stockholders are entitled to receive the same compound interest which has been received by the trustee as a result of his investment of trust funds, a more precise determination being sought to the effect that such preferred shareholders are in fact entitled to receive their proportionate share of the interest actually earned by the trustee as a result of his investment of the preferred shareholders funds.

In its opinion the Court directed that " * * * the preferred shareholders should receive their proportionate share of the income actually generated * * * ". The preferred shareholders note, however, that the opinion went on to state that:

"They are accordingly entitled to that portion of the income representing their interest in the trust earned between March 1, 1972, the date of the transfer of the assets to the trustee, and November 30, 1975, the date of final payment by the trustee to the preferred shareholders of sums representing liquidation preferences."

The language to which reference is made was intended to be an example and not to be a limitation on the right to receive interest. And inasmuch as the preferred shareholders acknowledge in their motion that the information required to arrive at an exact determination of the amount of interest to which they are entitled is in the hands of the trustee, he being in possession of the facts on the basis of which such preferred shareholders are to receive their proportionate share of the income actually generated, reduced only by their proportionate share of trust expenses, the trustee is in a position to make appropriate computations, the right of the preferred shareholders not being restricted to the receipt of simple interest but rather including the right to receive compound interest. The

pending motion for clarification or reargument of said issue is therefore denied.

The motion before the Court also seeks a ruling to the effect that:

"The 'expenses' to be charged against the Preferred Shareholders' portion of income generated should be restricted to the costs of producing the income generated, as opposed to debts or costs of other functions of the Trustee"

The question of what specific expenses are to be charged against the income due the preferred stockholders was not discussed in the petition or briefs submitted by the parties, the petition merely noting that the proposed distribution is to be of funds, which, in the trustee's judgment, are in excess of reserves which have been set aside to cover all foreseeable expenses, an amount which is not now determinable. Accordingly, there is no justiciable controversy pertaining to the issue of expenses. Consequently, no detailed instructions on this issue were given, the Court not being amenable to giving instructions upon matters which are not of present exigency, *Wilmington Trust Company v. Haskell*, Del. Ch., 282 A.2d 636 (1971), and *Equitable Trust Company v. Pyle*, 23 Del.Ch. 41, 2 A.2d 81 (1938).

Inasmuch as the opinion of the Court did not purport to deal in detail with the question of expenses, the motion for clarification or reargument on this subject is also denied.

An appropriate form of order may be submitted, on notice, in conformity with the above.