SHINTOM CO., LTD., a Japanese corporation, Plaintiff Below, Appellant,

v.

AUDIOVOX CORPORATION, a Delaware corporation, Defendant Below, Appellee.

No. 214,2005.

Supreme Court of Delaware.

Submitted: Sept. 20, 2005.
Decided: Oct. 31, 2005.

Jessica Zeldin, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, and Charles J. Moxley, Jr. (argued), Kaplan, Fox & Kilsheimer, New York City, for appellant.

Michael P. Kellye (argued) and A. Richard Winchester, McCarter & English, L.L.P., Wilmington, DE, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice:

This is an appeal from a final judgment entered by the Court of Chancery. The plaintiff-appellant, Shintom Co., Ltd. ("Shintom") filed a complaint against the defendant-appellee, Audiovox Corporation ("Audiovox"), seeking to recover over $2,500,000 in consideration it paid for shares of preferred stock. Shintom's complaint alleged that the preferred stock of Audiovox is void under title 8, section 151(c) of the Delaware Code because it has no dividend rights. The Court of Chancery concluded that Shintom's statutory interpretation was erroneous and dismissed its complaint as a matter of law.

The sole issue raised by Shintom on appeal presents this Court with an issue of first impression. According to Shintom, section 151(c) requires that the holders of preferred stock be accorded the right to receive dividends in *some* circumstances— subject to the rates, times and conditions established in the certificate of incorporation or applicable resolution(s). We have concluded that the Delaware statutory scheme imposes no such requirement, and that it is legally possible for an otherwise bona fide preferred stock of a Delaware corporation to have no right to receive dividends under *any* circumstance. Accordingly, the Court of Chancery prop-

erly held that section 151(c) does not require that preferred stock confer dividend rights.

### Facts

Shintom is a Japanese corporation with its principal place of business in Japan. Shintom manufactures and sells electronic products. Audiovox is a Delaware corporation with its principal place of business in Hauppage, New York. Audiovox designs and markets electronic products. Shintom seeks to recover over $2.5 million in consideration it paid for shares of Audiovox preferred stock on the grounds that the preferred stock is void.

In April 1981, Shintom purchased, for $2.5 million, 50,000 shares of Audiovox New York preferred stock. Audiovox New York was a New York corporation and the predecessor of defendant Audiovox Delaware. The holder of the Audiovox New York preferred stock was entitled to an annual noncumulative 10% dividend of $5 per share, although Audiovox New York never paid any such dividends.

On April 16, 1986, more than seventeen years before Shintom filed its complaint in the Court of Chancery, Audiovox New York merged into Audiovox Delaware. One feature of the merger agreement was the conversion of each outstanding share of noncumulative preferred stock, par value $50 per share, into an equal number of shares of non-dividend preferred stock, par value $50 per share, of the surviving company (Audiovox Delaware). The new non-dividend preferred stock had a liquidation preference over the common shares. It is these Audiovox Delaware preferred shares that Shintom now alleges are void.

### Statute Enables Preferred Stock Contracts

The Delaware General Corporation Law is an enabling statute that provides great flexibility for creating the capital structure of a Delaware corporation. The primary authority to issue stock and designate the powers, rights or preferences of certain stock classes is set forth in section 151.[1] Consistent with the enabling nature of the statutory scheme, section 151(a) affords Delaware corporations considerable latitude in creating classes of stock:

> Every corporation may issue 1 or more classes of stock ... which classes ... may have such voting powers, full or limited, or no voting powers, and such designations, preferences and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof, as shall be stated and expressed in the *certificate of incorporation* or of any amendment thereto, *or in the resolution or resolutions* providing for the issue of such stock adopted by the board of directors pursuant to authority expressly vested in it by the provisions of its certificate of incorporation.[2]

Although authority to create different classes of stock is expressly permitted by section 151(a), section 102(a)(4) also governs that subject. Section 102(a)(4) states:

> The *certificate of incorporation shall also set forth* a statement of the designations and the powers, preferences and rights, and the qualifications, limitations or restrictions thereof, which are permitted by § 151 of this title in respect of any class or classes of stock or any

---

1. See Drexler, Black & Sparks, *Delaware Corporation Law and Practice* § 17.01 (2004); Rodman Ward, Jr. et al., *Folk on the Delaware General Corporation Law* § 151.1 (4th ed. 2005).

2. Del.Code Ann. tit. 8, § 151(a) (2005) (emphasis added). *See Lehrman v. Cohen*, 222 A.2d 800, 806–07 (Del.1966).

series of any class of stock of the corporation and the fixing of which by the certificate of incorporation is desired, and an express grant of such authority as it may then be desired to grant to the board of directors to *fix by resolution or resolutions* any thereof that may be desired but which shall not be fixed by the certificate of incorporation.[3]

Accordingly, the rights of the preferred shareholders, *vis-à-vis* other shareholders, are fixed by the contractual terms agreed upon between the private parties and are set forth in the certificate of incorporation and/or applicable resolution(s).[4]

Preferred stock, as the term implies, is entitled to certain preferences over other stock. The word "preferred" conveys no special meaning in the abstract. The preferences must be specifically defined in the governing instruments.[5] Preferred stock may have a priority as to dividends or as to the distribution of assets and frequently has a priority as to both. Preferred stock may also include other rights, *e.g.,* to demand redemption or to be redeemed by the corporation at a specified price.

■ It is well established that the rights of a preferred shareholder are "least affected by rules of law and most dependent on the share contract."[6] Nevertheless, the provisions for preferred shares set forth in the certificate of incorporation must be lawful.[7] Preferred shares that do not comport with the statutory requirements of the Delaware General Corporation law are void.[8]

### Dividend Preference Statutorily Optional

■ Shintom's complaint alleged that title 8, section 151(c) of the Delaware Code mandates that the holders of preferred stock must receive dividend rights in some circumstances, and that because Audiovox Delaware's preferred shares do not pay dividends under any circumstance, they are void as a matter of law. The relevant language of section 151(c) reads as follows:

> The holders of preferred or special stock of any class or of any series thereof *shall be entitled to receive dividends* at such rates, on such conditions and at such times *as shall be stated in the certificate of incorporation or in the resolution or resolutions* providing for the issue of such stock adopted by the board of directors as hereinabove provided, payable in preference to, or in such relation to, the dividends payable on any other class or classes or of any other series of stock, and cumulative or noncumulative as shall be so stated and expressed. *When dividends* upon the

---

3. Del.Code Ann. tit. 8, § 102(a)(4) (emphasis added).

4. *STAAR Surgical Co. v. Waggoner,* 588 A.2d 1130, 1134–35 (Del.1991). *See also Elliott Assocs., L.P. v. Avatex Corp.,* 715 A.2d 843, 852–53 (Del.1998); *Wood v. Coastal States Gas Corp.,* 401 A.2d 932, 937 (Del.1979).

5. *Gaskill v. Gladys Belle Oil Co.,* 146 A. 337, 339 (Del.Ch.1929).

6. *Wood v. Coastal States Gas Corp.,* 401 A.2d at 937 (quoting Richard M. Buxbaum, *Preferred Stock—Law and Draftsmanship,* 42 Cal. L. Rev. 243, 279 (1954)).

7. *Elliott Assocs., L.P. v. Avatex Corp.,* 715 A.2d 843; *STAAR Surgical Co. v. Waggoner,* 588 A.2d at 1136.

8. *See, e.g., STAAR Surgical Co. v. Waggoner,* 588 A.2d 1130 (holding that preferred shares were void because invalidly issued and accordingly the common shares into which the preferred had been transferred were void); *Triplex Shoe Co. v. Rice & Hutchins, Inc.,* 152 A. 342, 366 (Del.1930) (stating that stock issued without authority is void).

preferred and special stocks, *if any,* to the extent of the preference .... [9]

Shintom argues that the "use of the word *shall* in section 151(c) means that the holders of preferred stock are entitled as a matter of law to dividend rights—that is, to the right to receive at least some dividends in some circumstances." According to Shintom, "the statute does not require that the holders of preferred shares receive dividends at any particular time or in any particular amount or, indeed, that they ever actually receive them, only that they have at least the right to receive dividends in some circumstances." In support of its argument, Shintom contrasts the use of the words "may" in section 151(a) with the use of the word "shall" in section 151(c).

Shintom's argument is contrary to the unambiguous meaning of the word "shall" as it is used in the context of section 151(c), and it is also inconsistent with the enabling scheme of the Delaware General Corporation Law statute. When sections 151(a) and (c) are read *in pari materia,* the use of the terms "shall" and "may" within the statutory framework make it clear that preferred stock need not confer dividend rights. Section 151(c) does not mandate that *all* preferred stock confer a right to payment of dividends. Instead, it confirms—consistent with the enabling language of section 151(a)—that a corporation "may" determine to issue preferred stock that "may" have a contractually determined dividend right as one of its preferences. If preferred stock is issued, however, section 151(c) provides that the holders of such stock "shall" *only* be entitled to receive dividends at the rate and under the conditions stated in the certificate of incorporation or applicable resolution(s).

Seventy-five years ago, the Court of Chancery reached the same conclusion in a case where the preferences at issue were set forth in a corporation's bylaws.[10] In *Gaskill,* the Court of Chancery held that the holders of preferred shares must refer *exclusively* to the certificate of incorporation to ascertain their rights:

> The statute, by providing that the preferred stock which corporations created under it *may* issue *shall* possess such preferences as are stated in the certificate of incorporation, by obvious inference must be taken to mean that *unless* the preferences are stated in the certificate of incorporation, they shall not exist.[11]

In reaching that conclusion, the Court of Chancery relied upon a New Jersey court's interpretation of the statute that served as the model for the Delaware provision.[12]

We find the *ratio decidendi* in *Gaskill* to be persuasive. Section 151(c) provides that the holders of preferred shares "shall be entitled to receive dividends at such rates, on such conditions and at such times as shall be stated in the certificate of incorporation" or applicable resolution(s). That is equivalent to stating that such shares shall have no other preferences.[13]

---

**9.** Del.Code Ann. tit. 8, § 151(c) (emphasis added).

**10.** *Gaskill v. Gladys Belle Oil Co.,* 146 A. 337, 339 (Del.Ch.1929).

**11.** *Id.* (emphasis added).

**12.** *Id.* ("To enact that the stock should have such preference as is stated or expressed in the certificate was equivalent to enacting that it should have no other preferences upon the general principle of interpretation that the expression of one thing is the exclusion of another." (quoting *Lloyd v. Pa. Electric Vehicle Co.,* 75 N.J.Eq. 263, 72 A. 16 (Err. & App.1909))).

**13.** *Id.*

We reach that conclusion by applying the same general principle of statutory construction that was invoked in *Gaskill:* the expression of one thing is the exclusion of another (*expression unius est exclusio alteruis*).[14] The unambiguous language of section 151(c) makes the mandatory "shall" nature of a preferred stockholder's entitlement to receive dividends expressly contingent upon those rights, "*if any,*" being set forth in the certificate of incorporation or applicable resolution(s).

### Audiovox Preferred Stock Valid

The Delaware General Corporation Law requires that preferred stock must have *some* bona fide preference over other stock.[15] A dividend right constitutes just one of several permissible preferences, *e.g.,* liquidation rights or redemption rights. The Delaware statutory scheme does not, however, require any particular form of preference. It allows private parties to contract for preferences between themselves and then specify the bargained for preferences in the certification of incorporation or applicable resolution(s).[16]

The Audiovox Certificate of Incorporation provides that preferred shares "shall not be entitled to receive any dividends," without limitation or qualification. Delaware law does not require that preferred shareholders have dividend rights. Therefore, Delaware corporations, such as Audiovox, may lawfully issue preferred shares without any dividend rights.

The Audiovox Certificate of Incorporation does, however, confer upon preferred shareholders a preference upon *liquidation of the corporation.*[17] Under Delaware law, that liquidation preference, without more, is sufficient to create a preferred stock.[18] Accordingly, we hold that preferred stock was lawfully issued to Shintom in compliance with the Delaware General Corporation Law and is valid.

### Conclusion

The preferred stock of Audiovox is not, as Shintom contends, void. The judgment of the Court of Chancery is affirmed.

---

**14.** *Id. See also Priest v. State,* 879 A.2d 575, 584 (Del.2005); *Walt v. State,* 727 A.2d 836, 840 (Del.1999).

**15.** *Telvest, Inc. v. Olson,* 1979 Del. Ch. Lexis 347 (Del.Ch.) (preliminarily enjoining a target company's issuance of preferred shares because the shares did not appear to have a genuine preference as to dividends or liquidation rights).

**16.** Del.Code Ann. tit. 8, §§ 151(a) and (c). *See Rothschild Int'l v. Liggett Group, Inc.,* 474 A.2d 133, 136 (Del.1984).

**17.** Article FOURTH (A)(5)(a) of the Audiovox Certificate of Incorporation provides: "In the event of any liquidation, dissolution or winding up (whether voluntary or involuntary) of the Corporation, holders of Preferred Stock shall be entitled to be paid $50 per share from the assets of the Corporation available for distribution ... before any amount shall be payable to holders of Common Stock."

**18.** *See* Del.Code Ann. tit. 8, § 151.