EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Elsie Herger Pacheco; Anabel Hernández Circuns; Margarita Ostolaza Bey<br><br>    Peticionarias<br><br>        v.<br><br>Calidad de Vida Vecinal, Inc.<br><br>    Recurrido | Certiorari<br><br>2014 TSPR 67<br><br>190 DPR ____ |

Número del Caso: CC-2012-993


Fecha: 28 de mayo de 2014


Tribunal de Apelaciones, Región Judicial de San Juan, Panel II


Abogados de la Parte Peticionaria:

        Lcdo. Carlos González Soler
        Lcda. María de L. Rivera de Jiménez


Abogados de la Parte Recurrida:

        Lcda. Vionette Benítez Quiñones
        Lcdo. Celio Cruz Caraballo


Materia: Ley de corporaciones 14 LPRA sección 3650.  Una corporación pueda ampliar válidamente mediante reglamento el derecho a la inspección de los libros y cuentas del a misma al omitir el requisito de propósito válido establecido en el artículo 7.10 de la Ley de Corporaciones siempre y cuando la solicitud de inspección no sea para hostigar a la corporación.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Elsie Herger Pacheco; Anabel Hernández Circuns; Margarita Ostolaza Bey<br><br>Peticionarias<br><br>v.<br><br>Calidad de Vida Vecinal, Inc.<br><br>Recurrido | CC-2012-0993 |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 28 de mayo de 2014

En esta ocasión nos corresponde examinar si, para efectos del artículo 7.10 de la Ley General de Corporaciones de Puerto Rico ("Ley de Corporaciones"), Ley Núm. 164 de 16 de diciembre de 2009, 14 L.P.R.A. sec. 3650, constituye un propósito válido conocer y evaluar las determinaciones tomadas por la Junta de Directores para establecer cómo se están administrando los fondos de la corporación mensualmente. De contestar esta interrogante en la negativa, debemos analizar si los estatutos de una corporación pueden conceder a los accionistas el derecho a inspeccionar los libros y cuentas de la corporación sin requerirles un propósito válido.

Pasemos entonces a resumir los hechos que sirven de trasfondo a la controversia ante nuestra consideración.

I

Calidad de Vida Vecinal, Inc. ("Calidad de Vida") es una corporación sin fines de lucro que administra la Urbanización Ocean Park en San Juan y se encarga, entre otras cosas, de cobrar cuotas de mantenimiento, contratar la seguridad privada de la comunidad y vigilar que los residentes cumplan con las normas establecidas. La señora Elsie Herger Pacheco es propietaria de un inmueble ubicado en la Urbanización Ocean Park y miembro de Calidad de Vida. El 29 de septiembre de 2011 la señora Herger Pacheco juramentó un requerimiento mediante el cual le solicitaba a Calidad de Vida permiso para la inspección y producción de los documentos, actas, resoluciones, minutas,[1] libros corporativos, estados financieros, estados de cuenta, certificado de incorporación y "By-Laws" de la corporación. Además, solicitó un listado sobre cualquier demanda o querella presentada por la corporación ante tribunales y/o agencias estatales o federales. Apéndice de la petición de *certiorari* en la pág. 62. Alegó como propósito válido para la inspección, "conocer y evaluar adecuadamente las determinaciones tomadas por la Junta de Calidad de Vida Vecinal al igual que establecer c[ó]mo se están administrando los fondos pagados por los miembros de

---

[1] Aun cuando las partes, así como la ley, hablan de minutas y actas como si fueran dos documentos distintos, ambos se refieren a una misma cosa; al documento que recoge todo lo que ocurrió en la primera reunión de incorporadores o en una reunión de la junta de directores o de accionistas y que debe ser aprobada en la próxima reunión de la junta correspondiente. *Véase* Carlos E. Díaz Olivo, *Corporaciones* 205 (2005).

dicha entidad mensualmente". *Id.* Fundamentó la solicitud de los documentos en el artículo 7.10 de la Ley de Corporaciones, 14 L.P.R.A. sec. 3650.

Calidad de Vida se opuso a la petición presentada por la señora Herger Pacheco y señaló que no podía cumplir con el requerimiento, ya que el mismo debía ser más específico sobre qué documentos la señora Herger Pacheco deseaba inspeccionar. En contestación, la señora Herger Pacheco sostuvo que limitaba su solicitud a los años 2005 a 2011. Calidad de Vida se opuso nuevamente a la petición. Alegó en esta ocasión, que la señora Herger Pacheco no tenía derecho a toda la documentación solicitada porque era miembro de Calidad de Vida desde agosto de 2011. También indicó que cualquier solicitud de documentos debía cumplir con las Reglas de Procedimiento Civil porque la acción presentada por Calidad de Vida contra Hostería del Mar, hotel en el cual la señora Herger Pacheco tiene un interés propietario, aún estaba ante los tribunales. La señora Herger Pacheco respondió que llevaba más de 10 años como miembro de Calidad de Vida y que el requerimiento no tenía relación alguna con el pleito contra Hostería del Mar, en el cual ella no era parte. A su vez, pendiente el requerimiento de la señora Herger Pacheco, el 19 de octubre de 2011 la señora Anabel Hernández Circuns, miembro de Calidad de Vida, juramentó un requerimiento

idéntico al presentado por la señora Herger Pacheco. [2] Apéndice de la petición de *certiorari* en la pág. 81.

En vista de que Calidad de Vida no cumplió con los requerimientos presentados, el 22 de noviembre de 2011 la señora Herger Pacheco y la señora Hernández Circuns presentaron una demanda contra Calidad de Vida solicitándole al Tribunal de Primera Instancia que emitiera una orden para la inspección y producción de los documentos requeridos. Alegaron que la denegatoria injustificada de Calidad de Vida iba en contravención a lo dispuesto en el artículo 7.10 de la Ley de Corporaciones, 14 L.P.R.A. sec. 3650, y en el artículo VIII del Reglamento de Calidad de Vida. [3] Por su parte, en su contestación a la demanda, Calidad de Vida argumentó que las demandantes no tenían un propósito válido según lo requiere el artículo 7.10, 14 L.P.R.A. sec. 3650, y que el único propósito era hostigar a la corporación para que

---

[2] El Tribunal de Primera Instancia indicó que, al igual que Elsie Herger Pacheco, Anabel Hernández Circuns también redujo la inspección solicitada a los 5 años previos a la fecha de su requerimiento. Apéndice de la petición de *certiorari,* en la pág. 49, n.1.

[3] El artículo VIII del Reglamento de Calidad de Vida Vecinal, Inc. dispone:

> La Corporación llevará y mantendrá libros de contabilidad, levantará actas de todas las reuniones de los miembros, la Junta de Directores, y de los Comités de la Corporación. A su vez, preparará y mantendrá al día un registro con el nombre y dirección de todos los miembros que pertenecen a la Corporación. Los libros y records de Calidad de Vida Vecinal, Inc. estarán disponibles y podrán ser examinados por cualquier miembro bonafide en horas hábiles. La Secretaria y el Tesorero de la Junta serán los custodios y tendrán a cargo lo anterior.

desistiera del pleito contra Hostería del Mar. Posteriormente, mientras se dilucidaba la controversia en el Tribunal de Primera Instancia, la señora Margarita Ostolaza Bey, miembro de Calidad de Vida, presentó una moción solicitando acumulación de parte. Alegó estar en la misma posición que la señora Herger Pacheco y la señora Hernández Circuns al haberle entregado a Calidad de Vida el 9 de noviembre de 2011 un requerimiento jurado idéntico al presentado por las demandantes. Apéndice de la petición de *certiorari* en la pág. 111.

Luego de varios trámites procesales, el 4 de junio de 2012, el Tribunal de Primera Instancia emitió una sentencia en la cual permitió la acumulación de parte pero declaró no ha lugar la demanda presentada. El foro primario fundamentó su determinación en que la señora Herger Pacheco, la señora Hernández Circuns y la señora Ostolaza Bey ("demandantes") no tenían un propósito válido debido a que el propósito primordial de éstas era satisfacer su curiosidad y embarcarse en una expedición de pesca.[4] Además, indicó que la solicitud de la señora Herger Pacheco aparentaba tener el propósito de hostigar a Calidad de Vida por ésta haber solicitado el cierre del hotel Hostería del Mar. Con respecto al artículo VIII del Reglamento de Calidad de Vida el Tribunal determinó, entre

---

[4] El Tribunal de Primera Instancia indicó que las demandantes no expresaron en sus alegatos por qué querían conocer y evaluar las determinaciones que ha tomado Calidad de Vida durante los últimos 5 años, como tampoco mencionaron algún hecho que demostrara que la corporación estaba violando su deber fiduciario.

otras cosas, que éste sólo proveía para una inspección limitada a lo allí dispuesto.

Insatisfechas, el 9 de julio de 2012 las demandantes presentaron un recurso ante el Tribunal de Apelaciones. Alegaron que el Tribunal de Primera Instancia había errado al determinar que carecían de un propósito válido que justificara la inspección solicitada y al concluir que el artículo VIII del Reglamento de Calidad de Vida no tenía la extensión que éstas alegaron. El 28 de septiembre de 2012 el Tribunal de Apelaciones confirmó la determinación del foro primario respecto a la falta de propósito válido de las demandantes e indicó que los requerimientos fueron excesivamente vagos e imprecisos y no estaban razonablemente conectados con el interés de las accionistas. Además, expresó que, independientemente del lenguaje amplio del reglamento, cualquier requerimiento de información corporativa tenía que cumplir con el propósito válido que exige el artículo 7.10, 14 L.P.R.A. sec. 3650.

Inconformes con tal determinación, las demandantes presentaron ante este Tribunal un recurso de *certiorari* mediante el cual nos solicitan que revoquemos la sentencia emitida por el foro apelativo intermedio. En el recurso presentado alegan que el Tribunal de Apelaciones erró al determinar que los requerimientos presentados por éstas carecían de un propósito válido. A su vez, sostienen que el foro apelativo intermedio erró al determinar que el artículo VIII del Reglamento está supeditado al requisito

de propósito válido del artículo 7.10, 14 L.P.R.A. sec. 3650, y que sólo se refiere a las actas y a los estados financieros que ya fueron entregados.[5]

Planteada así la controversia, expedimos el auto solicitado. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

La controversia de autos nos invita a examinar el artículo 7.10, 14 L.P.R.A. sec. 3650, y el artículo 1.08, 14 L.P.R.A. sec. 3508, de la Ley de Corporaciones para determinar si en este caso las demandantes tienen derecho a inspeccionar los libros y cuentas de la corporación.

## A

En nuestro ordenamiento se ha reconocido que los accionistas de una corporación tienen un derecho a inspeccionar los libros y cuentas de la misma. Este derecho se fundamenta en que los accionistas, al ser los dueños de la corporación, tienen derecho a proteger sus

---

[5] En específico, los errores planteados fueron los siguientes:

Primer error: erró el Tribunal de Apelaciones al determinar que el requerimiento de la parte demandante-peticionaria para la inspección y producción de libros y documentos corporativos carece de un propósito válido, fue vago, impreciso, impertinente y no razonablemente conectado con el interés de accionista (miembro) de la parte demandante-peticionaria.

Segundo error: erró el Tribunal de Apelaciones al determinar que el artículo VIII del Reglamento de Calidad de Vida Vecinal, Inc., está supeditado al requisito de propósito válido y que sólo se refiere a actas y estados financieros que ya fueron entregados.

Recurso de *Certiorari* en la pág. 8-9.

intereses y a poder investigar cómo se está manejando la corporación cuando sea necesario. *Véase*, *i.e.*, *Seinfeld v. Verizon Communications, Inc.*, 909 A.2d 117, 119 (Del. 2006). Esto es, "para asegurar la responsabilidad de la gerencia corporativa a sus accionistas". Carlos E. Díaz Olivo, *Corporaciones* 225 (2005).

En la Ley de Corporaciones este derecho está regulado por el artículo 7.10. 14 L.P.R.A. sec. 3650. En específico, este artículo establece el derecho de los accionistas a examinar y fotocopiar el registro de acciones, la relación de accionistas y los demás libros de la corporación mediante un requerimiento jurado.[6] Además,

---

[6] En lo pertinente, el artículo 7.10, 14 L.P.R.A. sec. 3650, dispone:

....

(b) Cualquier accionista, por sí o por apoderado u otro agente, mediante requerimiento jurado en donde consigne su propósito, tendrá el derecho de examinar, así como de hacer copias o extractos, para cualquier propósito válido durante las horas regulares de oficina:
(1) El registro de acciones, la relación de accionistas y los demás libros de la corporación

....

'Propósito válido' significará un propósito que se relacione razonablemente con el interés de la persona como accionista.

....

(c) Si la corporación, o un oficial o agente de la misma, se negare a permitir la inspección requerida por un accionista, su apoderado u otro agente actuando a nombre del accionista, según se dispone en el inciso (b) de esta sección, o no responde a la solicitud antes de trascurridos los cinco (5) días laborables posteriores al requerimiento, el accionista podrá recurrir al Tribunal de Primera Instancia (Sala Superior)

dispone que cuando el accionista procure inspeccionar los libros y cuentas de la corporación debe demostrar que: (1) es un accionista; (2) ha hecho el requerimiento según exige la ley; y (3) que la inspección que procura es para un propósito válido. 14 L.P.R.A. sec. 3650. Para efectos de la Ley, propósito válido se define como un propósito que se relacione razonablemente con el interés de la persona como accionista. 14 L.P.R.A. sec. 3650. Asimismo, la Ley establece que, en caso de que la corporación no

---

para solicitar que emita una orden que obligue a la corporación a permitir tal inspección. Por la presente, se le otorga jurisdicción exclusiva al Tribunal de Primera Instancia (Sala Superior) para determinar si la persona que solicita el examen tiene derecho o no al examen que se solicita. El tribunal podrá ordenar sumariamente a la corporación que permita al accionista examinar el registro de acciones, la relación existente de accionistas y los otros libros de la corporación, y hacer copias y extractos de los mismos. El tribunal también podrá ordenar a la corporación suplir al accionista una relación de sus accionistas a una fecha determinada con la condición de que el accionista, con anterioridad pague a la corporación el costo razonable de obtener y proveer tal relación, y otras condiciones que el tribunal estime apropiadas. Cuando el accionista procure examinar los libros y cuentas de la corporación que no sean el registro de acciones o la relación de accionistas, deberá demostrar que:
(1) Es un accionista;
(2) ha cumplido con esta sección, con respecto a la forma y la manera de hacer el requerimiento de examen de tales documentos, y
(3) que la inspección que procura es para un propósito válido.

....

El tribunal podrá imponer discrecionalmente cualquier limitación o condición con respecto al examen o conceder cualquier otro remedio que estime justo y razonable.
14 L.P.R.A. sec. 3650.

permita la inspección solicitada, el accionista puede recurrir al Tribunal de Primera Instancia y éste tiene jurisdicción exclusiva para determinar si el accionista tiene derecho o no al examen solicitado. 14 L.P.R.A. sec. 3650.

B

Explicado lo anterior, el presente caso requiere que analicemos el propósito válido que exige el artículo 7.10, 14 L.P.R.A. sec. 3650. Lo primero que debemos señalar es que la Asamblea Legislativa utilizó como modelo la Ley General de Corporaciones del estado de Delaware, 8 Del. C. sec. 101 *et seq.*, al promulgar nuestra Ley de Corporaciones. Exposición de Motivos de la Ley Núm. 164 de 16 de diciembre de 2009. Por tal razón, en ocasiones anteriores hemos recurrido a la jurisprudencia del estado de Delaware en materia de derecho de corporaciones como referencia para la resolución de controversias en nuestro ordenamiento. Recientemente en *Domenech Fernández v. Integration Corp.*, 187 D.P.R. 595 (2013), utilizamos esta jurisprudencia para resolver una controversia relacionada al derecho de inspección de los accionistas de una corporación.[7] Por tanto, examinamos el artículo 220, 8

---

[7] La controversia ante nosotros en *Domenech Fernández v. Integration Corp.*, 187 D.P.R. 595 (2013) versaba sobre si el solicitante de una inspección, en virtud del artículo 7.10 de la Ley de Corporaciones, 14 L.P.R.A. sec. 3650, podía presentar evidencia extrínseca para probar que era accionista o si sólo lo podía probar por medio de certificados de acciones o del registro de accionistas de la corporación.

Del. C. sec. 220,[8] de la Ley de Corporaciones de Delaware

al ser éste el que regula el derecho a inspección de los

accionistas.[9]

---

[8] En lo pertinente, en artículo 220 de la Ley General de Corporaciones de Delaware, 8 Del. C sec. 220, dispone:

> ....
>
> (b) Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose, and to make copies and extracts from:
> (1) The corporation's stock ledger, a list of its stockholders, and its other books and records
>
> ....
>
> A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder.
>
> ....
>
> (c) If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a stockholder or attorney or other agent acting for the stockholder pursuant to subsection (b) of this section or does not reply to the demand within 5 business days after the demand has been made, the stockholder may apply to the Court of Chancery for an order to compel such inspection. The Court of Chancery is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought. The Court may summarily order the corporation to permit the stockholder to inspect the corporation's stock ledger, an existing list of stockholders, and its other books and records, and to make copies or extracts therefrom; or the Court may order the corporation to furnish to the stockholder a list of its stockholders as of a specific date on condition that the stockholder first pay to the corporation the reasonable cost of obtaining and furnishing such list and on such other conditions as the Court deems appropriate. Where the stockholder seeks to inspect the corporation's books and records, other than its stock ledger or list of stockholders, such stockholder shall first establish that:

En *Domenech* expresamos que, al igual que en nuestro artículo 7.10, 14 L.P.R.A. sec. 3650, el artículo 220 de la Ley de Corporaciones de Delaware requiere un propósito válido y lo define como "a purpose reasonably related to such person's interest as a stockholder". 8 Del. C. sec. 220. A base de lo anterior, determinamos que el derecho a inspección no es absoluto, debido a que el propósito válido no puede ser adverso a los intereses de la corporación. *Domenech Fernández*, 187 D.P.R. en la pág. 617, *haciendo referencia a Compaq Computer Corp. v. Horton*, 631 A.2d 1, 4 (Del. 1993). A su vez, indicamos que una vez el solicitante demuestra que es accionista y que tiene un propósito válido, cualquier otro propósito secundario es irrelevante. *Id.* en la pág. 617-618, *haciendo referencia a Northwest Industries, Inc. v. B.F.*

---

> (1) Such stockholder is a stockholder;
> (2) Such stockholder has complied with this section respecting the form and manner of making demand for inspection of such documents; and
> (3) The inspection such stockholder seeks is for a proper purpose.
>
> ....
>
> The Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other or further relief as the Court may deem just and proper.

8 Del. C. sec. 220.

[9] Cabe señalar que el artículo 220, 8 Del. C. sec. 220, de la Ley de Corporaciones de Delaware ha sido enmendado en varias ocasiones para, entre otras cosas, expandir la acepción de los términos accionistas y lista de accionistas, extender los derechos de inspección a los "beneficial owners" y reconocer el derecho de inspección en torno a los libros y records de las corporaciones subsidiarias. E.P. Welch, *Folk on the Delaware General Corporation Law* GCL-VII-220, Vol. I (5ta ed. rev. 2012).

*Goodrich Co.*, 260 A.2d 428, 429 (Del. 1969); *General Time Corp. v. Talley Industries, Inc.*, 240 A.2d 755 (Del. 1968). A esto se le añade que, como resultado, si la corporación se opone al requerimiento demostrando que el accionista tiene un propósito ulterior impropio, eso no es suficiente. *Pershing Square, L.P. v. Ceridian Corp.*, 923 A.2d 810, 817 (Del. Ch. 2007). En estos casos, la corporación debe demostrar que el propósito alegado es un pretexto y que el verdadero propósito no es válido según la Ley de Corporaciones. *Id.*

También expresamos que constituyen propósitos válidos: determinar el valor de las acciones de una corporación, "particularmente en las corporaciones de individuos, cuyas acciones no están sujetas a venta pública"; determinar si una corporación tiene la capacidad de pagar dividendos; y calcular bonos de producción. *Domenech Fernández*, 187 D.P.R. en las págs. 618, 623 *haciendo referencia a CM & M Group, Inc. v. Carroll*, 453 A.2d 788, 792-793 (Del. 1982); *Helmsman's Management Services, Inc. v. A & S Consultants Inc.*, 525 A.2d 160, 165 (Del. Ch. 1987).

Por su parte, la existencia de un propósito válido o la falta del mismo es una cuestión de hecho y se determina caso a caso. *CM & M Group, Inc. v. Carroll*, 453 A.2d 788, 792 (Del. 1982); *Helmsman Management Services, Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 164 (Del. Ch. 1987).

Cuando se solicita la inspección de los libros y cuentas, el accionista tiene el peso de la prueba de demostrar que el propósito que alega es válido, por lo tanto, "[m]erely stating that one has a proper purpose, however, is necessarily insufficient". *Melzer v. CNET Networks, Inc.*, 934 A.2d 912, 917 (Del. Ch. 2007). Para ilustrar lo anterior, cuando se alega como propósito válido investigar transacciones impropias o mala administración, el Tribunal Supremo de Delaware ha requerido que el accionista demuestre, mediante preponderancia de la prueba, que tiene una base razonable para creer que la corporación está siendo mal administrada. En lo pertinente, expresó que:

> A stockholder is 'not required to prove by a preponderance of the evidence that waste and [mis]management are actually occurring'. Stockholders need only show, by a preponderance of the evidence, a credible basis from which the Court of Chancery can infer there is possible mismanagement that would warrant further investigation-a showing that 'may ultimately fall well short of demonstrating that anything wrong occurred'. That 'threshold may be satisfied by a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing'. Although the threshold for a stockholder in a section 220 proceeding is not insubstantial, the 'credible basis' standard sets the lowest possible burden of proof. The only way to reduce the burden of proof further would be to eliminate any requirement that a stockholder show *some evidence* of possible wrongdoing. That would be tantamount to permitting inspection based on the 'mere suspicion' standard that Seinfeld advances in this appeal. However, such a standard has been repeatedly rejected as a basis to justify the enterprise cost of an inspection.
>
> ....

> We remain convinced that the rights of stockholders and the interests of the corporation in a section 220 proceeding are properly balanced by requiring a stockholder to show 'some evidence of *possible* mismanagement as would warrant further investigation.' The 'credible basis' standard maximizes stockholder value by limiting the range of permitted stockholder inspections to those that might have merit.

*Seinfeld v. Verizon Communications,* 909 A.2d 117, 123-125 (Del. 2006).

En estos casos se exige alguna prueba que coloque al tribunal en posición de determinar si existe o no un propósito válido, manteniendo así un balance entre el derecho de los accionistas y los mejores intereses de la corporación.

Otro propósito que se ha considerado válido es la clarificación de discrepancias en los estados financieros de la corporación. *State ex rel. Miller v. Loft, Inc.*, 156 A. 170 (Del. 1931). *Véase además*, Díaz Olivo, *supra,* pág. 227. Por otro lado, se ha resuelto que no son propósitos válidos la mera curiosidad o iniciar un litigio para hostigar a la corporación. *Compaq Computer Corp.*, 631 A.2d 1, 5 (Del. 1993). *Véase además,* Díaz Olivo, *supra,* pág. 227.

Ahora bien, una vez el accionista demuestra que tiene un propósito válido, eso no significa que tiene derecho a ver todos los libros y cuentas de la corporación. Éste podrá inspeccionar los documentos que sean necesarios para lograr su propósito. Es decir,

> [a] petitioning stockholder who has complied with the statute's procedural requirements and who has satisfactorily proved a proper purpose

for the requested inspection will have
demonstrated his entitlement to inspection.
However, that entitlement is not open-ended; it
is restricted to inspection of the books and
records needed to perform the task. Accordingly,
inspection is limited to those documents that
are necessary, essential, and sufficient for the
shareholders' purpose.

*BBC Acquisition Corp. v. Durr-Fillauer Medical, Inc.*, 623
A.2d 85, 88 (Del. Ch. 1992). (Citas omitidas)


                                C

Por su parte, los estatutos corporativos establecen

la manera en que una corporación deberá operar. Díaz

Olivo, *supra*, en la pág. 46. Es decir, "son el reglamento

interno de la corporación" y se utilizan para establecer

normas específicas y, de ser convenientes, auto-limitantes

para el funcionamiento de la corporación. *Id.* En el caso

de Puerto Rico, el artículo 1.08 de la Ley de

Corporaciones, 14 L.P.R.A. sec. 3508, [10] regula lo

---

[10] El artículo 1.08 de la Ley de Corporaciones, 14 L.P.R.A.
sec. 3508, dispone lo siguiente:
   (a) Los estatutos iniciales o subsiguientes de
   la corporación podrán adoptarse, enmendarse o
   derogarse por los incorporadores, por los
   directores iniciales si fueron nombrados en el
   certificado de incorporación, o si la
   corporación no ha recibido pago alguno por sus
   acciones, por la junta de directores. Después
   que la corporación haya recibido cualquier pago
   por cualesquiera acciones, la facultad para
   adoptar, alterar o derogar los estatutos,
   corresponde a los accionistas con derecho al
   voto o, en el caso de corporaciones sin
   acciones, a los socios o miembros con derecho al
   voto. En todo caso, el poder para adoptar,
   enmendar o derogar los estatutos puede
   conferirse a la junta de directores o, en el
   caso de corporaciones sin acciones, al organismo
   directivo, cualquiera que sea su nombre, en el
   certificado de incorporación. El hecho de que
   tal poder sea conferido a la junta de directores
   o al organismo directivo que corresponda, según

relacionado a los estatutos de una corporación. Allí se dispone que los estatutos no pueden ser contrarios a la ley, la política pública, ni a lo establecido en el certificado de incorporación. 14 L.P.R.A. sec. 3508; *véase además* Díaz Olivo, *supra*, págs. 46-47. Éstos pueden contener disposiciones referentes a los negocios de la corporación, a la marcha de sus asuntos, y a los derechos o poderes de la corporación o de sus accionistas, directores, oficiales o empleados. 14 L.P.R.A. sec. 3508.

Por ejemplo, de ordinario, en los estatutos se establecen "las fechas y la manera de convocar a las reuniones, el quorum requerido para éstas, las posiciones directivas que habrá en la empresa, la manera de seleccionar y separar de sus cargos a las personas, los requisitos para tales cargos, su término de duración y cualquier otro asunto que se entienda pertinente sobre los negocios y la operación interna de la corporación". Díaz Olivo, *supra*, pág. 46.

Ahora bien, los estatutos de la corporación no pueden prohibir el derecho a inspección o hacer el requerimiento más oneroso. No obstante, nada impide que

---

sea el caso, no despojará o limitará a los accionistas o socios del poder de adoptar, enmendar o derogar los estatutos.
(b) Los estatutos podrán contener cualquier disposición que no sea contraria a la ley o al certificado de incorporación, referente a los negocios de la corporación, a la marcha de sus asuntos, y los derechos o poderes de la corporación o de sus accionistas, directores, oficiales o empleados.
14 L.P.R.A. sec. 3508.

una corporación por medio de sus estatutos le conceda más derechos a sus accionistas o directores que aquellos que la ley reconoce, siempre y cuando con ello no se actúe contrario a la ley, a la política pública y a lo establecido en el certificado de incorporación. Esto es, si la corporación entiende que está en sus mejores intereses proveerles a los accionistas un derecho más amplio que el concedido por el artículo 7.10, 14 L.P.R.A. sec. 3650, está en libertad de hacerlo y ello no es contrario a la Ley General de Corporaciones.

III

Discutida la normativa aplicable, pasemos a resolver la controversia ante nuestra consideración.

En este caso las demandantes sostienen que "conocer y evaluar adecuadamente las determinaciones tomadas por la Junta de Directores y establecer c[ó]mo se están administrando los fondos pagados por los miembros de la corporación mensualmente" constituye un propósito válido según lo requiere el artículo 7.10, 14 L.P.R.A. sec. 3650. No tienen razón. Veamos.

En *Helmsman Management Services, Inc. v. A & S Consultants, Inc.* la Corte de Cancillería de Delaware se enfrentó a un propósito similar al alegado por las demandantes. Helmsman Management Services, Inc. presentó un requerimiento solicitando inspeccionar los libros y cuentas de la corporación A & S Consultants. Entre los propósitos alegados se encontraba "[t]o ascertain the

corporation's condition or its affairs so that Helmsman

can vote and otherwise exercise its rights in an informed

manner".[11] Al analizar el propósito expresado, la Corte

indicó que:

> Helmsman's broadly-phrased purpose may be viewed as subsuming two independent, far narrower purposes. The first is to investigate the possibility of general mismanagement and waste. Conceptually speaking, that purpose is valid. *Skoglund v. Ormand Industries, Inc.*, 372 A.2d [204] at 210-211. Factually, however, that purpose finds no support in the record, because, in this case, unlike *Skoglund v. Ormand Industries, Inc., supra,* there is no record evidence of possible corporate mismanagement or waste such as would support the type of broad, general records inspection ordered in *Skoglund.* A mere statement of a purpose to investigate possible general mismanagement, without more, will not entitle a shareholder to broad § 220 inspection relief. There must be some evidence of possible mismanagement as would warrant further investigation of the matter. *See Neely v. Oklahoma Publishing Company,* Del. Ch., Civil Action No. 5293, Brown, V.C. (August 15, 1977), *reprinted at* Del. J. Corp. L. 138, 143 (1977). No such evidence was adduced in this case.
> *Helmsman Management Services, Inc.,* 525 A. 2d en la pág. 165-166.

No obstante, la Corte sostuvo que el segundo interés

alegado por el accionista, esto es, investigar las

transacciones de la corporación sobre las cuales debía

haber sido notificado, era un propósito válido ya que el

---

[11] Los otros propósitos alegados por Helmsman Management Services, Inc. eran: "(1) to determine the value of its stock interest in A & S, .... (3) to determine the reason for the nonpayment of dividends, and (4) to determine whether or not there are sufficient funds available for the payment of dividends." *Helmsman Management Services, Inc. v. A & S Consultants, Inc.,* 525 A. 2d 160, 165 (Del. Ch. 1987).

demandante no había sido notificado de dos reuniones de accionistas y éste tenía derecho a saber qué transacciones se habían aprobado sin su voto. *Helmsman Management Services, Inc.,* 525 A. 2d en la pág. 166. En la controversia ante nuestra consideración, no se alega ningún otro propósito, sólo conocer cómo se está manejando la corporación.

Aun si interpretáramos que las demandantes tienen un interés de investigar una mala transacción o la mala administración de Calidad de Vida y, por tal razón, están solicitando la inspección, éstas no cumplieron con el peso de la prueba que requiere el artículo 7.10, 14 L.P.R.A. sec. 3650. Es decir, no presentaron prueba que pusiera al Tribunal en posición de determinar la existencia de una creencia razonable de la mala administración que se quiere investigar. No se requiere, como afirman las demandantes, que se pruebe afirmativamente la mala administración de la corporación, sino que se presente alguna prueba que establezca una creencia razonable que le permita al tribunal inferir que se está administrando mal la compañía. En este caso, coincidimos con el foro primario en que el propósito alegado en los requerimientos presentados no es un propósito válido para efectos de la Ley de Corporaciones.

Nos parece que requerir algo más que mera curiosidad al solicitar una inspección para determinar cómo se está administrando la corporación, en un caso en el cual no hay

ningún indicio o sospecha de una mala transacción o de una mala administración, es afín con el balance que se quiere proteger en la Ley de Corporaciones al exigir un propósito válido para inspeccionar los libros y cuentas de la corporación. Reiteramos que la existencia de un propósito válido es una cuestión de hecho, por lo cual se determinara caso a caso. *CM & M Group, Inc.,* 453 A.2d en la pág. 792; *Helmsman Management Services, Inc.*, 525 A. 2d en la pág. 164. Consecuentemente, entendemos que no se demostró un propósito válido según lo requiere el artículo 7.10, 14 L.P.R.A. Sec. 3650.

Resuelto lo anterior, resta por determinar si el artículo VIII del Reglamento de Calidad de Vida Vecinal está supeditado al requisito de propósito válido del artículo 7.10, 14 L.P.R.A. sec. 3650, y si sólo se refiere a las actas y a los estados financieros que ya fueron entregados. El artículo VIII dispone lo siguiente:

> La Corporación llevará y mantendrá libros de contabilidad, levantará actas de todas las reuniones de los miembros, la Junta de Directores, y de los Comités de la Corporación. A su vez, preparará y mantendrá al día un registro con el nombre y dirección de todos los miembros que pertenecen a la Corporación. **Los libros y records de Calidad de Vida Vecinal, Inc. estarán disponibles y podrán ser examinados por cualquier miembro bonafide en horas hábiles.** La Secretaria y el Tesorero de la Junta serán los custodios y tendrán a cargo lo anterior.

Artículo VIII de Reglamento de Calidad de Vida Vecinal, Inc. (Énfasis suplido)

Como se puede observar, del artículo en controversia no surge expresamente que los miembros tienen que demostrar un propósito válido; sólo se indica que "[l]os

libros y records de Calidad de Vida Vecinal, Inc. estarán disponibles y podrán ser examinados por cualquier miembro bonafide en horas hábiles". Por tal razón, a base del artículo VIII, entendemos que para inspeccionar los libros de contabilidad y las actas de todas las reuniones de los miembros, de la Junta de Directores y de los Comités de la Corporación, no se requiere propósito válido.

Ahora bien, se ha reiterado por este Tribunal que "[l]a buena fe es un principio general del derecho que permea todo nuestro ordenamiento jurídico y que goza de firme arraigo." *Alvarez v. Rivera*, 165 D.P.R. 1 (2005); *Marcial v. Tome*, 144 D.P.R. 522 (1997); *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339 (1989). Por tanto, aunque la corporación prescinda del requisito de propósito válido, los accionistas no pueden abusar del derecho a inspección al utilizarlo de mala fe para hostigar a la corporación. De ser este el caso, la corporación tiene el peso de la prueba y debe demostrar que el accionista hizo el requerimiento de mala fe para hostigar a la corporación. De otra manera, se debe permitir la inspección solicitada, aunque ésta sea por mera curiosidad.

Por otro lado, entendemos que el artículo VIII del Reglamento sólo se refiere a los libros de contabilidad y a las actas de todas las reuniones de los miembros, la Junta de Directores y de los Comités de la Corporación, pues en el referido artículo se indica que éstos son

libros que Calidad de Vida debe mantener.[12] Por tanto, para los demás libros y cuentas de la corporación se requiere que, conforme al artículo 7.10, 14 L.P.R.A. sec. 3650, se cumpla con el requerimiento jurado y se demuestre un propósito válido para inspeccionarlos. Según reseñamos, las demandantes no cumplen con este requisito.[13]

Conforme a lo anterior, las demandantes tienen derecho a inspeccionar los libros de contabilidad y las actas de todas las reuniones de los miembros, la Junta de Directores, y de los Comités de la Corporación, sujeto a que la solicitud de inspección no sea para hostigar a la corporación. Por tal razón, se devuelve el caso al

---

[12] Conforme a las alegaciones de la demandada las razones por las cuales se limitaron los documentos que pueden ser revisados mediante el artículo VIII son las siguientes: (a) mantener a los miembros de Calidad de Vida Inc. informados sobre cómo se utilizan los fondos de la corporación; (b) proveer la información necesaria para demostrar cómo se utilizan los fondos de la corporación; y (c) proveer la información de una forma efectiva que no afecte la operación de la corporación, sobre todo cuando la misma cuenta con limitadísimos recursos, ya que todas las personas que sirven en la misma donan de su tiempo libre para el beneficio de sus más de 400 miembros. Alegato en Oposición a Petición de *Certiorari* en la pág. 16.

[13] Según los requerimientos, las demandantes tendrían que demostrar propósito válido para inspeccionar los documentos emitidos y/o en posesión de Calidad de Vida, las resoluciones emitidas por Calidad de Vida y los libros corporativos, exceptuando los libros de contabilidad. Con respecto al certificado de incorporación, éste es un documento público que se puede obtener en el Departamento de Estado. Igual ocurre con el listado sobre cualquier demanda o querella presentada por la corporación ante tribunales y/o agencias estatales o federales lo cual también es información pública. Los estatutos de la corporación ya están en posesión de las demandantes, ya que, según Calidad de Vida, éstos están incluidos en su Reglamento.

Tribunal de Primera Instancia para que determine si las solicitudes de inspección de las demandantes, a base del artículo VIII del Reglamento de Calidad de Vida, son de mala fe. En ausencia de mala fe, procede la entrega de los libros de contabilidad y las actas de las reuniones de los miembros, Junta de Directores y Comités de la Corporación de 2005 a 2011.

IV

A tenor con lo anterior, se confirma parcialmente la sentencia del Tribunal de Apelaciones en cuanto a la falta de propósito válido según el artículo 7.10, 14 L.P.R.A. sec. 3650, y se revoca su determinación con respecto a que el derecho de inspección que provee el artículo VIII del Reglamento de Calidad de Vida está supeditado el requisito de propósito válido del artículo 7.10 de la Ley de Corporaciones, 14 L.P.R.A. sec. 3650. A tales efectos, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Elsie Herger Pacheco;
Anabel Hernández Circuns;
Margarita Ostolaza Bey

    Peticionarias                     CC-2012-0993

       v.

Calidad de Vida Vecinal, Inc.

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 28 de mayo de 2014

Por los fundamentos expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se dicta Sentencia confirmando parcialmente la sentencia del Tribunal de Apelaciones en cuanto a la falta de propósito válido según el artículo 7.10, 14 L.P.R.A. sec. 3650, y se revoca su determinación con respecto a que el derecho de inspección que provee el artículo VIII del Reglamento de Calidad de Vida está supeditado el requisito de propósito válido del artículo 7.10 de la Ley de Corporaciones, 14 L.P.R.A. sec. 3650. A tales efectos, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta concurre en parte y disiente en parte con la siguiente expresión, a la cual se une el Juez Asociado señor Estrella Martínez: "Estoy de acuerdo con la determinación de que una corporación puede ampliar válidamente mediante reglamento el derecho a la inspección de los libros y cuentas de la misma, al omitir el requisito de propósito válido establecido en el artículo 7.10 de la Ley General

de Corporaciones, Ley Núm. 164-2009, 14 L.P.R.A. sección 3650. En su Reglamento, Calidad de Vida Vecinal, Inc., se obliga a llevar los libros de contabilidad y levantar las actas de todas las reuniones. Además, permite su inspección a cualquier miembro bonafide en las horas hábiles de la oficina de la corporación. La Opinión mayoritaria resuelve correctamente que las peticionarias no tienen que alegar un propósito válido para poder inspeccionar los libros de contabilidad y las actas de las reuniones. Como el Reglamento de Calidad de Vida Vecinal, Inc., tampoco impone un requisito de buena fe, no estoy de acuerdo con devolver el caso al Tribunal de Primera Instancia para que este determine la buena fe de las peticionarias. Por eso, y en ausencia de un requerimiento de propósito válido, le ordenaría a la corporación que le permita a las peticionarias inspeccionar los documentos enumerados en su Reglamento."

La Jueza Asociada señora Pabón Charneco emitió una Opinión Disidente en parte y de Conformidad en parte. El Juez Asociado señor Feliberti Cintrón inhibido.

<br>

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

| | | |
|---|---|---|
| Elsie Herger Pacheco;<br>Anabel Hernández Circuns;<br>Margarita Ostolaza Bey<br><br>Peticionarias<br><br>v.<br><br>Calidad de Vida Vecinal, Inc.<br><br>Recurrida | CC-2012-<br>0993 | *Certiorari* |

Opinión Disidente en parte y de Conformidad en parte emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 28 de mayo de 2014.

*Sin fundamento jurídico alguno*, en el día de hoy una Mayoría de este Tribunal se equivoca en Derecho al resolver que por virtud de los estatutos corporativos adoptados por una corporación, se puede prescindir del requisito encontrado en ley de demostrar un propósito válido para inspeccionar los libros y documentos corporativos. Al concluir lo anterior, la Mayoría erróneamente determinó que las Sras. Elsie Herger Pacheco, Anabel Hernández Circuns y Margarita Ostolaza Bey (en adelante, las "peticionarias") tenían derecho a inspeccionar ciertos documentos corporativos de Calidad de Vida Vecinal, Inc. (en adelante, la "recurrida"), a pesar de no haber demostrado tener un propósito válido para la inspección solicitada.

Por entender que el Art. 1.08(b) de la Ley Núm. 164-2009, conocida como Ley General de Corporaciones, 14 L.P.R.A. sec. 3508(b), *expresamente prohíbe* que los

estatutos corporativos contengan disposiciones contrarias a las leyes o al Certificado de Incorporación, disiento.

Los hechos que dieron lugar a la controversia de autos están correctamente expuestos en la Opinión Mayoritaria. Por tanto, me limito a discutir el Derecho, aplicar el mismo y explicar mi postura en cuanto a lo erróneamente resuelto por la Mayoría del Tribunal.

I

Según la obra del reconocido tratadista y profesor de Derecho Corporativo, el Licenciado Carlos Díaz Olivo, los estatutos corporativos son el reglamento interno de la corporación y su propósito es establecer la manera en que la misma habrá de operar. C.E. Díaz Olivo, *Corporaciones*, San Juan, Publicaciones Puertorriqueñas, 1999, pág. 46. Se trata de las reglas o leyes privadas promulgadas por la corporación para regular, gobernar y controlar sus propias acciones, asuntos y preocupaciones, así como las relaciones entre sus accionistas, directores y oficiales, entre sí y para con la corporación. 8 W.M. Fletcher, *Cyclopedia of the Law of Private Corporations* sec. 4166 (Perm. Ed. 2010). Los estatutos corporativos son documentos privados que no deben ser radicados ante agencia gubernamental alguna. Díaz Olivo, *op. cit.*, pág. 46.

En Puerto Rico, el Art. 1.08 de la Ley Núm. 164-2009, 14 L.P.R.A. sec. 3508, es la disposición legal que

gobierna lo relativo a la adopción, enmienda, o derogación de los estatutos corporativos de una corporación organizada en nuestra jurisdicción. En lo pertinente, el Art. 1.08(b) de la Ley Núm. 164-2009, *supra*, dispone lo siguiente:

> Los estatutos podrán contener cualquier disposición **que no sea contraria a la ley o al certificado de incorporación**, referente a los negocios de la corporación, a la marcha de sus asuntos, y los derechos o poderes de la corporación o de sus accionistas, directores, oficiales o empleados. (Énfasis nuestro).

Conforme a lo anterior, existe una prohibición expresa contra la adopción de estatutos corporativos que contravengan lo dispuesto por ley o el Certificado de Incorporación. *Íd.*

Como se conoce, nuestra ley corporativa está basada en la Ley General de Corporaciones de Delaware, 8 Del.C. sec. 101 *et seq.* Véase Exposición de Motivos de la Ley Núm. 164-2009. Al igual que nuestra propia ley, la Sec. 109(b) de la Ley General de Corporaciones de Delaware, 8 Del.C. sec. 109(b), prohíbe que los estatutos corporativos de una corporación sean contrarios a la ley o al Certificado de Incorporación.[14] De hecho, el Art. 1.08(b) de la Ley Núm. 164-2009, *supra*, es una traducción *ad*

---

[14] El texto de la Sec. 109(b) de la Ley General de Corporaciones de Delaware, *supra*, dispone lo siguiente:

> The bylaws may contain any provision, **not inconsistent with law or with the certificate of incorporation**, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees. (Énfasis nuestro).

*verbatim* de la Sec. 109(b) de la Ley General de Corporaciones de Delaware, *supra*. Así las cosas, la jurisprudencia emitida por los tribunales de dicho estado es altamente persuasiva para nuestro correspondiente análisis.

El Tribunal Supremo de Delaware ha resuelto que en casos donde esté en controversia la validez de los estatutos corporativos de una corporación, los mismos se presumen válidos y los tribunales deben interpretarlos de manera consistente con la ley, antes de llegar a declararlos nulos. *Frantz Mfg. Co. v. EAC Industries*, 501 A.2d 401, 407 (Del. 1985); *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934, 948-949 (Del. Ch. 2013); Fletcher, *supra*, Vol. 8, secs. 4184-4185. Al interpretar un estatuto corporativo, los tribunales de Delaware utilizan los mismos principios aplicables a la interpretación de las leyes y los contratos. *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 342-343 (Del. 1983); *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1007 (Del. Ch. 2010); Fletcher, *supra*, Vol. 8, sec. 4195.

No obstante, si luego del correspondiente análisis el tribunal determina que el estatuto corporativo es inconsistente con la ley, el mismo adolece de nulidad. *Frantz Mfg. Co. v. EAC Industries*, *supra*, pág. 407; *Kerbs v. California Eastern Airways, Inc.*, 90 A.2d 652, 659 (Del. 1952); *Gaskill v. Gladys Belle Oil Co.*, 146 A. 337, 340 (Del. Ch. 1929). El Tribunal Supremo de Delaware

incluso ha sido categórico al expresar que es nulo un estatuto corporativo que sea contrario a la Ley General de Corporaciones de Delaware, *supra*. *Crown EMAK Partners, LLC v. Kurz*, 992 A.2d 377, 398 (Del. 2010). Además, los estatutos corporativos deben ser razonables en cuanto a su aplicación. *Frantz Mfg. Co. v. EAC Industries*, *supra*, pág. 407; *Schnell v. Chris-Craft Industries, Inc.*, 285 A.2d 437, 439 (Del. 1971); *State v. Jessup & Moore Paper Co.*, 77 A. 16, 19 (Del. 1910).

De igual manera, el Tribunal Supremo de Delaware ha expresado que conforme a la Sec. 109(b) de la Ley General de Corporaciones de Delaware, *supra*, adolece de nulidad un estatuto corporativo que se encuentra en conflicto con lo dispuesto en el Certificado de Incorporación. *Airgas, Inc. v. Air Products and Chemicals, Inc.*, 8 A.3d 1182, 1189 (Del. 2010); *Centaur Partners, IV v. National Intergroup, Inc.*, 582 A.2d 923, 929 (Del. 1990); *Burr v. Burr Corp.*, 291 A.2d 409, 410 (Del. Ch. 1972); *Prickett v. American Steel & Pump Corp.*, 253 A.2d 86, 88 (Del. Ch. 1969).

## II

Pasemos ahora a analizar la disposición legal que **conforme a lo erróneamente resuelto por la Opinión Mayoritaria**, fue objeto de modificación por virtud de los estatutos corporativos adoptados por la recurrida.

El derecho de los accionistas a inspeccionar los libros de una corporación cumple el propósito de "asegurar la responsabilidad ("accountability") de la gerencia

corporativa a sus accionistas". Díaz Olivo, *op. cit.*, pág. 225. Por otro lado, la reglamentación del derecho de inspección por virtud de ley "responde al deseo de evitar interrupciones innecesarias en la administración de la corporación". *Íd.* El balance de estos dos intereses se logra condicionando la inspección a que el accionista que la solicita cumpla con los requisitos que dispone la ley para ello, lo cual incluye tener un propósito válido. *Central Laborers Pension Fund. v. News Corp.*, 45 A.3d 139, 144-145 (Del. 2012).

En lo pertinente, el Art. 7.10 de la Ley Núm. 164-2009, 14 L.P.R.A. sec. 3650, dispone que cualquier accionista tendrá el derecho a examinar y hacer copias o extractos del registro de acciones, la relación de accionistas y los demás libros de la corporación durante horas regulares de oficina. Para ello, debe radicar ante la corporación un requerimiento jurado donde se consigne el propósito de la inspección, que debe ser *cualquier propósito válido*. *Íd.* La propia Ley define *propósito válido* como "un propósito que se relacione razonablemente con el interés de la persona como accionista". *Íd.* Ante la negativa de la corporación de permitir la inspección solicitada, un accionista tiene el remedio de acudir ante el Tribunal de Primera Instancia para que éste ordene a la corporación a que le permita inspeccionar los documentos. *Íd.* Cuando se trate de los libros y cuentas de la corporación, que no sean el registro de acciones o la

relación de accionistas, el accionista debe demostrar a satisfacción del Tribunal su condición de accionista, que ha cumplido con la forma y manera de hacer el requerimiento de inspección y que cuenta con un propósito válido. *Íd.* De ordenar a la corporación a permitir la inspección solicitada, el foro primario tiene la facultad discrecional de imponer cualquier limitación o condición para la inspección de los documentos o cualquier otro remedio que estime justo y razonable. *Íd.*

El Art. 7.10 de la Ley Núm. 164-2009, *Íd.*, también proviene de la Ley General de Corporaciones de Delaware, *supra*, aunque con ciertas diferencias que no son relevantes para resolver la controversia ante nuestra consideración. *Domenech v. Integration Corp. et al.*, 187 D.P.R. 595, 610-611 (2013).[15] No obstante, recientemente este Tribunal tuvo la oportunidad de comparar ambas leyes y determinamos que tanto la Sec. 220 de la Ley General de Corporaciones de Delaware, 8 Del.C. sec. 220, como el Art. 7.10 de nuestra Ley Núm. 164-2009, *supra*, requieren que quien solicite la inspección sea un accionista y que ostente un propósito válido. *Domenech v. Integration Corp. et al.*, *supra*, pág. 617. En esa ocasión también

---

[15] En *Domenech v. Integration Corp. et al.*, *supra*, pág. 617, luego de discutir la trayectoria y evolución de la Sec. 220 de la Ley General de Corporaciones de Delaware, 8 Del.C. sec. 220, determinamos que a diferencia de Delaware, donde se permite la presentación de prueba extrínseca para probar la titularidad sobre acciones únicamente en el caso de los fideicomisos de acciones, nuestro Art. 7.10 de la Ley Núm. 164-2009, *supra*, permite la presentación de evidencia extrínseca para probar la titularidad sobre una acción de manera general. Ello, debido a que al adoptar nuestro estatuto el legislador omitió la oración encontrada en la ley de Delaware donde condiciona la presentación de evidencia extrínseca a casos en donde exista un fideicomiso de acciones. *Domenech v. Integration Corp. et al.*, *supra*, pág. 617.

determinamos que -aunque el accionista cuente con un propósito válido- "el derecho de inspección no es absoluto porque el propósito válido no puede ser adverso a los intereses de la corporación". *Íd.*, citando a *Compaq Computer Corp. v. Horton*, 631 A.2d 1, 4 (Del. 1993). Además, resaltamos que el Tribunal Supremo de Delaware consistentemente ha reiterado que una vez el solicitante demuestra que es accionista y que tiene un propósito principal válido para realizar la inspección, cualquier otro propósito ulterior es irrelevante. *Íd.*, págs. 617-618, citando a *Northwest Industries, Inc. v. B.F. Goodrich Co.*, 260 A.2d 428, 429 (Del. 1969); *General Time Corp. v. Talley Industries, Inc.*, 240 A.2d 755, 756 (Del. 1968).

Aunque una corporación puede reglamentar el derecho de inspección de libros y documentos de los accionistas mediante los estatutos corporativos, la reglamentación no puede ser inconsistente con la ley o con los artículos de incorporación. Fletcher, *supra*, Vol. 5A, sec. 2216. Lo anterior es cónsono con nuestro Art. 1.08(b) de la Ley Núm. 164-2009, *supra*, que como ya discutimos prohíbe que las corporaciones organizadas en nuestra jurisdicción adopten estatutos corporativos que sean contrarios a la ley o al Certificado de Incorporación.

A finales del siglo XIX y principios del siglo XX, en controversias donde no existía disposición legal que requiriese tener un propósito válido y la corporación tampoco lo exigía en sus estatutos corporativos, varios

tribunales expresaron que no era necesario que el accionista demostrase tener un propósito válido para la inspección. Fletcher, *supra*, Vol. 5A, sec. 2221; *State v. Cities Service Co.*, 115 A. 773, 775-776 (Del. 1922); *Wyoming Coal Mining Co. v. State*, 87 P. 337, 338-339 (Wy. 1906); *Foster v. White*, 6 So. 88, 89-90 (Al. 1889). Por otro lado, de la misma jurisprudencia surge que la corporación podría negar la solicitud de inspección si entiende que se trata de mera curiosidad o por un propósito inválido o ilegal, en cuyo caso la corporación tendría el peso de la prueba. *Íd.*

No obstante, hoy día se han adoptado leyes donde expresamente se requiere la existencia de un propósito válido para la inspección de los libros y demás documentos corporativos en todas las jurisdicciones de los Estados Unidos, incluyendo la nuestra, convirtiendo a los casos *State v. Cities Service Co.*, *supra*, *Wyoming Coal Mining Co. v. State*, *supra*, y *Foster v. White*, *supra*, inaplicables a la controversia de autos. Fletcher, *supra*, Vol. 5A, sec. 2222. En el caso de Puerto Rico, el Art. 7.10 de la Ley Núm. 164-2009, *supra*, expresamente requiere que el accionista demuestre tener un propósito válido para la inspección de los documentos corporativos. ***Permitir lo contrario, tal y como hizo una Mayoría de este Tribunal en la Opinión que antecede, va contra lo dispuesto en el Art. 1.08(b) de la Ley Núm. 164-2009, supra, pues se está***

*avalando un estatuto corporativo que indudablemente contraviene la ley*.

III

Los estatutos corporativos de la recurrida los podemos encontrar en el Reglamento de Calidad de Vida Ambiental, Inc. (en adelante, el "Reglamento"). El Art. VIII de dicho Reglamento provee lo siguiente:

ARTICULO VIII – LIBROS Y RECORDS

La Corporación llevará y mantendrá libros de contabilidad, levantará actas de todas las reuniones de [los] miembros, la Junta de Directores, y de los Comités de la Corporación. A su vez, preparará y mantendrá al día un registro con el nombre y dirección de todos los miembros que pertenecen a la Corporación. *Los libros y records de Calidad de Vida Vecinal, Inc. estarán disponibles y podrán ser examinados por cualquier miembro bonafide en horas hábiles*.

La Secretaria y el Tesorero de la Junta serán los custodios y tendrán a cargo lo anterior.[16] (Énfasis nuestro).

El Tribunal de Primera Instancia dictaminó que por virtud del Art. VIII del Reglamento, las peticionarias tenían derecho a inspeccionar los documentos allí mencionados sin la necesidad de demostrar la existencia de un propósito válido. El foro primario fue revocado por el Tribunal de Apelaciones y determinó que no obstante el lenguaje encontrado en el Reglamento, el mismo no puede contravenir lo dispuesto por el Art. 7.10 de la Ley Núm. 164-2009, *supra*.

---

[16] Véase el Apéndice 4 del recurso de *Certiorari*, págs. 73-80.

Según anticipado, como parte de la Opinión Mayoritaria, *erróneamente y sin fundamento jurídico alguno se revoca al Tribunal de Apelaciones en cuanto al alcance del Art. VIII del Reglamento* y se resuelve que los estatutos corporativos de la corporación recurrida les proveen a sus miembros el beneficio de poder inspeccionar los documentos allí mencionados sin la necesidad de ostentar un propósito válido, siempre y cuando no sea para hostigar a la corporación. Ello, someramente discutiendo el Art. 1.08 de la Ley Núm. 164-2009, *supra*, *sin atención a que su propio texto veda lo adoptado por la Mayoría de este Tribunal.*

Conforme a nuestra discusión en los acápites I y II de esta Opinión, *la Ley Núm. 164-2009 explícitamente requiere que exista un propósito válido para la inspección de documentos corporativos, y además prohíbe que un reglamento o estatuto corporativo sea contrario a la ley*. Arts. 7.10 y 1.08(b) de la Ley Núm. 164-2009, *supra*. La claridad de ambas disposiciones legales no da espacio para interpretaciones adicionales, ya que es norma conocida que cuando la ley es clara y libre de ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir su espíritu. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14; *Pueblo en interés Menor E.A.L.N.*, 187 D.P.R. 352, 363 (2012).

En cuanto a la validez del estatuto corporativo en controversia, previo a decretar su nulidad debemos

presumir su validez e interpretarlo de manera consistente con la ley. *Frantz Mfg. Co. v. EAC Industries*, *supra*, pág. 407. Con ello en mente, cabe destacar que tampoco estamos de acuerdo con la Opinión Mayoritaria en cuanto a que la redacción del Art. VIII del Reglamento tiene el propósito o la intención de eximir a los accionistas de demostrar un propósito válido para inspeccionar los documentos corporativos en él mencionados. Contrario a lo resuelto por una Mayoría del Tribunal, no podemos concluir que la intención de la Junta de Directores era eximir de tal requisito por el mero hecho de no mencionarlo expresamente en el Reglamento. Lo anterior es evidente cuando lo expresado en el Art. VIII del Reglamento no es más que un estatuto corporativo básico encontrado como modelo en un conocido tratado de Derecho Corporativo.[17]

Así las cosas, de una lectura en conjunto del Art. VIII del Reglamento y los Arts. 1.08 y 7.10 de la Ley Núm. 164-2009, *supra*, la única interpretación razonable del estatuto corporativo en cuestión es que el mismo no exime a los accionistas de demostrar un propósito válido para la inspección de los documentos de la corporación recurrida. Esta interpretación nos permite sostener la validez del

---

[17] Véase 1A W.M. Fletcher, *Fletcher Corporation Forms Ann.* sec. 1206 (4ta ed. rev. 1999) (The accounts and books of the corporation, or any of them, shall be open to the inspection of the shareholders, at all reasonable business hours). El mismo tratado provee otros ejemplos de cómo se puede reglamentar la inspección de los libros y documentos corporativos por los accionistas, incluyendo uno similar al de la controversia de autos: "Each shareholder shall have the right to inspect the books and records of the company at any time during regular business hours of the company". *Íd.*, sec. 1397.

Art. VIII del Reglamento, resultando innecesario decretar su nulidad.

IV

Por último, resta expresar que estoy conforme con lo resuelto en la Opinión Mayoritaria a los efectos de que las peticionarias no demostraron tener un propósito válido para la inspección de los documentos corporativos de la recurrida, de acuerdo a lo exigido por el Art. 7.10 de la Ley Núm. 164-2009, *supra*.

En la controversia de autos, las peticionarias se limitaron a alegar en todo momento como propósito válido para la inspección el poder conocer y evaluar adecuadamente las determinaciones tomadas por la Junta de Directores y establecer cómo se están administrando los fondos pagados mensualmente por sus miembros. Esto, sin más, no es suficiente para cumplir con la exigencia de demostrar un propósito válido de acuerdo al Art. 7.10 de la Ley Núm. 164-2009, *supra*. De entender que la corporación está siendo mal administrada, el único remedio que tendrían las peticionarias es volver a realizar su solicitud demostrando la existencia de un propósito válido para la inspección solicitada. Para ello, las peticionarias deben demostrar *mediante preponderancia de la prueba* que tienen una *base razonable* para creer que la corporación recurrida está siendo mal administrada, poniendo así a los tribunales en posición de evaluar si cuentan con un propósito válido para la inspección.

*Seinfeld v. Verizon Communications*, 909 A.2d 117, 123-125 (Del. 2006). *Véase además City of Westland Police & Fire Ret. Sys. v. Axcelis Tech., Inc.*, 1 A.3d 281, 287-288 (Del. 2010).

V

La norma que hoy adopta este Tribunal al permitir que un estatuto corporativo altere la voluntad de la Asamblea Legislativa ***es contraria a nuestro Derecho Corporativo y además trastoca los cimientos de nuestro ordenamiento jurídico en general al permitir que un documento privado vaya por encima de la ley***. El resultado correcto en Derecho era determinar que no obstante el lenguaje encontrado en el Art. VIII del Reglamento de la peticionaria, es necesario que sus miembros tengan un propósito válido para la inspección de los documentos corporativos. Así las cosas, lo que procedía era confirmar el dictamen del foro apelativo intermedio en toda su extensión, decretando que las peticionarias no demostraron contar con un propósito válido para la inspección solicitada y que el Art. VIII del Reglamento no les exime del requisito de demostrar un propósito válido.

Por todo lo antes expuesto, disiento en parte y estoy conforme en parte con la Opinión Mayoritaria.

Mildred G. Pabón Charneco
Jueza Asociada